### PORTER v. ALLEN.

The *Ohio* river is a common highway, and its character in that respect
is not restricted to what may be called the channel.

Persons navigating the *Ohio* river may, without incurring the fault of
culpable neglect, run their boats in any part of the stream where the
water is of sufficient depth to carry them safely.

Where a person's business or property is injured or endangered by an
obstruction in a watercourse, he may remove it; but he will not be
allowed to leave it at a place in the stream where it would be likely
to endanger the property of navigators.

The value of a cargo at or near the place where the vessel was lost, is
not an unreasonable measure of damages, where the loss was the re-
sult of the defendant's misconduct.

APPEAL from the *Perry* Court of Common Pleas.
DAVISON, J.—*Allen* was the plaintiff below, and *Porter*
the defendant. The complaint charges that on the night
of the 12th of *September*, 1853, the plaintiff was running
his flatboat, loaded with lime, down the *Ohio* river, in
the usual channel; and that when a short distance below
*Cannelton*, on the *Indiana* side of the river, the boat was

*Wednesday,
May 28.*

snagged and sunk, and thereby lost; that said boat and lime were worth 1000 dollars; and that the loss accrued by reason of the defendant having unlawfully ·put· a snag or log in the river, and in the channel of the river where boats usually run. It is averred that the plaintiff used due diligence in navigating the river; that the boat, at the time of the loss, was in the channel of the river; and that the loss was not the result of his negligence, &c. The defendant answered, 1. By a general denial; and 2. That if the loss did accrue, which is denied, it was by the plaintiff's own want of care, &c. The reply to the second defense is as follows: Said loss did accrue as stated in the complaint, and not in consequence of want of care, &c. There was a verdict in favor of the plaintiff for 600 dollars, upon which, over a motion for a new trial, a judgment was rendered, &c.

The record contains the evidence. It shows that in the spring of 1853, a large log floated down said river, and lodged about seventy-five feet from the shore, near the landing and coal railway of the defendant; that during low water the log interfered with his landing, and also threatened the destruction of his coal slide; and that in *June*, 1853, a steamboat, by the defendant's direction, was hitched to the snag, and attempts were made to haul it ashore, but the lines not being strong enough, having parted several times, he caused it to be hauled out six hundred feet from the shore on a bar, about fifty yards from the channel, where it was left; that afterwards it floated down seventy-five· feet below the place where it was left; that the bar is a gravel one, commencing a half a mile above, and continuing about one hundred yards below, the defendant's landing, and has been there five years. It was further shown that, on the night of the 14th of *September*, 1853, as the plaintiff's flatboat was going down the river, loaded with lime, it struck the log and sank,—when, if there had been no obstruction, the boat would have gone through safely; that the river, at the time of the accident, had risen between four and five feet from its lowest

stage, and the log, except about six inches of the root end, was covered with water; that the loss occurred at three o'clock in the night, when the moon had gone down; and that the obstruction was seen by some of the hands on board, before the boat struck, but not in time to avoid it.

" Ordinarily, every person is bound to use reasonable care to avoid or prevent danger or damage to his person or property. Wherever, therefore, the injury complained of would never have existed, but for the misconduct or *culpable neglect* of the plaintiff, ......... he cannot recover, but must bear the consequences of his own fault." 2 Greenl. Ev. s. 473. This we regard as settled law. In the case before us, the plaintiff was not entitled to a verdict, if he was in fault by the improper management of his boat, and by ordinary care might have avoided the injury. *Butterfield* v. *Forrester*, 11 East, 60.—*Smith* v. *Smith*, 2 Pick. 621.

But the inquiry whether the plaintiff had used ordinary care, was fairly before the jury: it was their business to judge of the evidence, and it is not for this Court to disturb their conclusions, unless they are manifestly unsupported by the proofs. It is alleged in the complaint, but not proved, that "the boat, at the time of the loss, was in the channel of the river." Indeed, the proof is that it was not in the channel when the disaster occurred. That allegation, however, was not material; nor was the proof, of itself, sufficient to establish want of care. The *Ohio* river is a common highway, and its character in that respect is not restricted to what may be called the channel. We are not inclined to hold that persons navigating that river may not, without incurring the fault of culpable neglect, run their boats outside of the channel, in water sufficiently deep to carry them along safely. True, the weight of evidence seems to be that boats passing down the river usually run in the channel about one hundred yards from the place where the boat sank. There were, however, three witnesses who testified that they had repeatedly seen flat-boats

running at, or very near, that place. In relation to this branch of the case, the defendant moved the Court to instruct the jury as follows: "If the boat was not in the usual and ordinary channel where flatboats are usually run, the plaintiff cannot recover." The motion was properly overruled. Though it was proper for the jury to consider the fact assumed in the instruction, in connection with the other facts proved in the case, still it was alone insufficient to control the verdict. It was for the jury, in view of all the evidence, to decide whether the plaintiff used ordinary care in the management of his boat. They have decided that question, and we are not prepared to say that that decision is plainly erroneous. But on this point the jury were correctly instructed. At the instance of the defendant they were distinctly told that, "If the loss arose from the negligence of the plaintiff, and by ordinary skill as a pilot, and with proper care and caution, he · could have avoided the. injury, he cannot recover, although the defendant was guilty of negligence in placing the log where it was."

The next inquiry relates to the removal of the log. Being an obstruction to the defendant's business, and dangerous to his property, he had an undoubted right to remove it; but in the exercise of such right, the law would not allow him to leave the removed log, at a place in the river, where it would be likely to endanger the property of others.

In addition to the instruction already noticed, the defendant asked the following: 1. "If the defendant was obstructed in the use of the river at his landing, by the log which had floated there since he commenced occupying and using said landing, and his property was endangered by it, he had a right to shove it out so that it could float off, and the plaintiff cannot recover. 2. If the defendant used ordinary care in placing the log upon a bar where it is not usual for laden boats to run he is not liable." These instructions were refused, and, we think, correctly. The defendant may have "had a right to shove out the log so that it could float

off," and still not be entitled to a verdict. If the instruction had assumed that he had done that and nothing more, it might have been a proper direction to the jury. As to the latter charge, we repeat, that the Ohio river is a common highway; and it was no excuse for the defendant that he placed the log at a point in the river "where it was not usual for laden flatboats to run." If such boats could run there with safety but for the log, it created an obstruction, no matter how much care and prudence the defendant may have used. To hold that every part of the river, except where boats usually run, may be wilfully obstructed, would be an adjudication unsupported by any rule of law. The defendant, for the protection of his property, no doubt, had the right to remove the log; but the point of inquiry is, was its removal to a place in the river where boats can and do run, a reasonable exercise of his right—a cautious regard for the rights of others who use the stream for the purposes of navigation? To this question the verdict gives a negative, and, in our opinion, a correct answer. It is not for us to point out what disposition should have been made of the log: still, the evidence fairly induces the conclusion that the defendant, in view of his convenience and the safety of his property, could have disposed of it without creating an obstruction to the navigation of the river. But for that obstruction, the boat would have passed safely: it follows, the plaintiff having used ordinary diligence in the management of his boat, that the defendant's misconduct must be held the proximate cause of the loss.

There is a question raised as to the damages. The boat was worth 125 dollars; and there were 712 barrels of lime, which cost, delivered on the boat, 56 cents a barrel. Two witnesses testified that the lime was worth 75 cents, another, 75 or 80 cents per barrel, and there was evidence tending to prove that the boat and cargo were worth 600 dollars. It is contended that the prime cost of the lime and the value of the boat, were the true measure of damages; and that the jury having failed to

adopt that rule in estimating the loss, the verdict is erroneous. Upon the subject of damages, no charges were asked or given, nor does the record inform us as to the rule by which they were estimated. "Probable profits at the port of destination should not be allowed;" nor does it appear that such constituted a part of the verdict. As to the value of the lime the witnesses speak generally. They do not designate the place at which it was worth 75 cents per barrel; and the jury may have inferred that its value at *Cannelton*, or some other point near the place of loss, was intended. This value, in view of the facts presented by the record, would not, in our opinion, be an improper measure of damages. At all events, the loss having resulted alone from the defendant's misconduct, "the law will not nicely attempt to limit the amount of reparation."—4 Ind. R. 473. We think the jury have not over estimated the amount to which the plaintiff was entitled.

*Per Curiam.*—The judgment is affirmed, with 2 per cent. damages and costs.

*B. Smith*, for the appellant.

*J. B. Huckeby* and *C. H. Mason*, for the appellee.