[No. 7004.   Decided November 14, 1908.]

# A. J. WEST, *Respondent*, v. JOHN I. MARTIN *et al.*, *Appellants.*[1]

ADMIRALTY — JURISDICTION—MARITIME TORTS—COURTS—COLLISION. An injury by a vessel to the pier of a bridge over a navigable stream is not a maritime tort, of which the courts of admiralty would have jurisdiction, since the connection of the bridge with the land is the deciding feature rather than the matter of locality; and it is immaterial that the damage was largely effected by the action of the water after the bridge fell.

SHIPPING—LIENS—TORTS BY VESSEL—DAMAGE TO BRIDGE.   Bal. Code, § 5953, providing for liens on a vessel for injuries committed by it to persons or property, gives a lien for damages by a vessel to the pier of a bridge.

SAME—COURTS—JURISDICTION—STATE LIENS ON VESSELS. The state courts have jurisdiction to enforce a lien given by state laws for damages done by vessels, where the admiralty courts are without jurisdiction.

SAME—LIENS—AGAINST VESSEL — ATTACHMENT — ENFORCEMENT— RECEIVERS—JURISDICTION—BOND FOR RELEASE—EFFECT. In an action to enforce a lien given by a state law upon a vessel for damages, the appointment of a receiver for the vessel is the equivalent of an attachment and the proceeding is *in rem;* and upon the defendants' giving a bond for the release of the vessel, the regularity of the attachment cannot be questioned.

SAME—DAMAGES—INJURY BY VESSEL.   The measure of damages for injury by a vessel to a pier and portion of a bridge is the actual cost of repairing it, and a reasonable sum as the net profits of the bridge during the time it could not be used.

Appeal from a judgment of the superior court for Chehalis county, Irwin, J., entered March 26, 1907, upon findings in favor of the plaintiff, after a trial before the court without a jury, in an action to enforce a lien against a vessel for damages.   Reversed.

*J. C. Cross, W. H. Brinker,* and *Richard Saxe Jones* (*A. Emerson Cross,* of counsel), for appellants.

*John C. Hogan,* for respondent.

[1]Reported in 97 Pac. 1102.

## ON REHEARING.

HADLEY, C. J.—A rehearing was granted in this cause, and argument was heard at the present term. A statement of the case may be found in the original opinion, 47 Wash. 417, 92 Pac. 334, to which we here refer in order to avoid repetition. The only question determined by the former opinion was that of jurisdiction. It was held that the facts brought the case within the jurisdiction of admiralty. In view of certain discriminations which had theretofore been made in the decisions of the supreme court of the United States, it was believed that that tribunal would so hold should it be called upon to consider facts identical with those involved herein concerning the locality of the collision and the resulting injury. It now appears, however, that we erred in the entertainment of that view. Since our decision was rendered the supreme court of the United States has rendered two decisions directly involving collisions between vessels and bridges which span navigable waters. *Cleveland Terminal & Valley R. Co. v. Cleveland Steamship Co.*, 208 U. S. 316, 28 Sup. Ct. 414, 52 L. Ed. 508; *The Troy*, 208 U. S. 321, 28 Sup. Ct. 416, 52 L. Ed. 512.

In the case first above cited, the court followed what was said in *The Plymouth*, 3 Wall. 20, 18 L. Ed. 125, distinguished what was said in *The Blackheath*, 195 U. S. 361, 25 Sup. Ct. 46, 49 L. Ed. 236, and reached the conclusion that the locality of the collision was not maritime, for the reason that the injured structure was so connected with the shore that it immediately concerned commerce upon the land. The two cases cited were companion cases in their facts, although one was appealed from the northern district of Ohio and the other from the western district of Wisconsin. The decisions were rendered on the same day, and the decision in *The Troy* was based upon the opinion in the first case cited. So far as the question of locality is concerned, those decisions are binding upon this court.

In our former opinion we simply endeavored to anticipate what would be the decision of the higher tribunal in such a case, and now that we find we were mistaken, it becomes our duty to reverse our former holding upon this subject, unless a further feature suggested by appellants has the effect to establish the locality of this injury as a maritime one. We refer to the matter mentioned at the close of the former opinion where it was suggested that, inasmuch as the damage was largely effected by the action of the water after the bridge fell, the locality of the damage was, for that reason, a maritime one. We were of the view that when that opinion was prepared that the Federal supreme court was disposed to give much force to the matter of locality in determining the dividing lines between admiralty jurisdiction and that of the state courts, and that very technical distinctions had been observed in order to fix the locality as being either maritime or nonmaritime. The later decisions cited above seem, however, to give more force to the character of the structure colliding with the vessel, it being connected with the land or otherwise, as the determining factor, than to the mere matter of locality which was so much discussed in the earlier decisions. We therefore believe there are no facts in this case to distinguish it from the later decisions cited so far as the matter of locality is concerned, and that upon that question the admiralty court has not jurisdiction.

The appellants further contend that the state court has no jurisdiction, for the reason that the statute invoked by respondent and cited in the former opinion is not applicable to the facts of the case at bar, and if so, that the statute is unconstitutional. It having been determined that admiralty has not jurisdiction, then it must follow that the subject is open for state legislation, and is within the jurisdiction of the state courts. The statute, Bal. Code, § 5953, provides for liens upon "all steamers, vessels, and boats, their tackle, apparel and furniture." It is evidently intended to reach foreign as well as domestic vessels, and the property injured

by the vessel need not necessarily be transportable, as argued by appellants. The statute is broad enough to include damage to a permanent structure like a bridge. To give it any other construction would be extremely technical, and we do not think the legislature intended that a restricted or narrow meaning should be given the statute. The statute expressly provides that demands for injuries by the vessel shall constitute liens upon the vessel. Such liens created by state statutes are enforcible in the state courts when the subject-matter is not within the jurisdiction of admiralty.

"The rule to be deduced from these cases, so far as they are pertinent to the one under consideration, is this, that wherever any lien is given by a state statute for a cause of action cognizable in admiralty either *in rem* or *in personam*, proceedings *in rem* to support such lien are within the exclusive jurisdiction of the admiralty courts. But the converse of this proposition is equally true, that if a lien upon a vessel be created for a claim over which a court of admiralty has no jurisdiction in any form, such lien may be enforced in the courts of this state." *Knapp, Stout & Co. v. McCaffrey,* 177 U. S. 638, 20 Sup. Ct. 824, 44 L. Ed. 921.

The state court therefore has jurisdiction in the case at bar to enforce a lien for the damage done.

A temporary receiver was appointed by the court, and the vessel was taken in charge by him at the beginning of this action. As suggested by respondent, this was in effect an equitable attachment of the property. The appellants entered an appearance, and executed a bond for the release of the property, which bond was to the effect that appellants will pay to respondent any sum or claim which may be established in this case upon the cause of action mentioned in the complaint. The bond was like that given in the case of *Johnson v. Chicago & Pac. Elevator Co.,* 119 U. S. 388, 7 Sup. Ct. 254, 30 L. Ed. 447. The court there said:

"So far, therefore, as this suit is concerned, the action, in the shape in which it comes before this court, is a suit *in*

*personam* with an attachment as security, the attachment being based on a lien given by the state statute, and a bond having been, by the act of the defendant, substituted for the thing attached."

The situation is analogous to that of an attachment at law where a bond for the release of the attached property has been given, conditioned for the payment of the judgment which shall be obtained in the cause. The security of the bond becomes substituted for that of the released property, and any question as to the regularity of the attachment cannot afterwards be raised. *Brady v. Onffroy,* 37 Wash. 482, 79 Pac. 1004. We hold that the statute is valid, and that the court had in all respects jurisdiction to enter the judgment.

It is urged by appellants that sufficient authority from the war department of the United States to maintain the bridge was not shown. We are satisfied with the showing upon that subject, and believe that no error was made by the trial court in so finding.

Appellants object to the rule for measuring damages adopted by the court. They contend for the difference between the market values of the bridge before and after the injury as the true measure. Such a rule under the circumstances would be fraught with much uncertainty. The property was peculiar and local in its nature, and the market value was necessarily regulated by the amount of demand for its use by the public at that particular place, having reference to the population of the city at that time and to the probable increase thereof within reasonable limitations. An attempt to establish such a value it must be seen would have been attended with much uncertainty. Again, the damage was to a portion of the bridge only, which compelled the making of repairs before any part of it could be used. It was not an article that respondent could procure in the market. In such case, we think the true measure is the actual cost of repairing. *Jackson etc. Works v. Hurl-*

*burt*, 158 N. Y. 34, 52 N. E. 665, 70 Am. St. 432. It is also urged that recovery of a reasonable sum as the net profits from the bridge during the time it could not be used should have been denied. We think there was no error in this regard.

"Where the natural and direct result of a tort is the interruption of or an injury to an established business, there may be a recovery of profits lost during the period of enforced suspension or by reason of the tortious act." 8 Am. & Eng. Ency. Law (2d ed.), 625. See, also, Sutherland, Damages (3d ed.), § 70.

We believe that the findings of the court are substantially supported by the testimony, and that they should not be disturbed. The judgment is affirmed.

RUDKIN, MOUNT, CROW, and DUNBAR, JJ., concur.

FULLERTON, J., took no part.