[No. 14596. Department Two. September 27, 1918.]

W. A. HOUCHEN, *Respondent*, v. OREGON-WASHINGTON RAILROAD & NAVIGATION COMPANY, *Appellant*.[1]

PLEADING — DAMAGES — WAIVER OF OBJECTIONS. A complaint demanding general damages from the sinking of a pile-driver, not moved against for not being more specific, covers such damages as were the necessary and direct result of the sinking.

COLLISION — DAMAGES — MEASURE OF DAMAGES — INJURY TO PILE-DRIVER. The elements of the measure of damages for the sinking of a pile-driver that could not be procured on the market at any time, are the replacing it in condition so far as possible, coupled with depreciation in value and the loss of use, if any, which includes the cost of raising and repairing, etc., the total recovery not to exceed the value at the time and place of the accident.

COLLISION—NEGLIGENCE—RIGHT OF NAVIGATION—INSTRUCTIONS. In an action for damages from a collision when a steamboat ran into a pile-driver anchored near fish traps, an instruction that the right

[1]Reported in 175 Pac. 316.

of navigation with reasonable regard to the rights of others is paramount to any other use of navigable waters, is properly given; and it is proper to refuse a requested instruction that the right to construct fish traps is subordinate at all times to the superior right of navigation and that steamboats may operate over any water of sufficient depth provided they act without wantonness or malice.

Same — Contributory Negligence — Failure to Carry Light — Trial—Instructions. Under Fed. Stat. Ann. 158, requiring vessels at anchor to carry a light, upon an issue as to whether a light was carried by defendant's pile-driver at anchor when struck by a steamboat, plaintiff is entitled to an instruction that it would be negligence *per se* not to carry a light.

Same—Negligence—Presumptions — Instructions. In an action for damages from collision when a steamboat ran into a pile-driver at anchor, the jury should be instructed that there is a presumption of law that it was the fault of the vessel in motion unless the pile-driver was not anchored in a proper place or not showing a proper warning light.

Main, C. J., and Chadwick, J., dissent.

Appeal from a judgment of the superior court for Wahkiakum county, Hewen, J., entered June 23, 1917, upon the verdict of a jury rendered in favor of the plaintiff, in an action in tort. Reversed.

*A. C. Spencer* and *John F. Reilly,* for appellant.

*William Stuart* and *J. Bruce Polwarth,* for respondent.

Holcomb, J.—Respondent instituted a common law action against appellant to recover damages for $2,500 for injuries caused at 2:50 a. m., on September 1, 1916, by appellant's side-wheel steamer "T. J. Potter" in colliding with respondent's pile-driver, which was anchored in the Cathlamet channel of the Columbia river just north of Puget Island, which divides the river into two channels. Some ten days prior to the accident, the upper Burke fish-trap, consisting of a row of piling approximately 500 feet long and extending out from the river bank, had been put in under Fed-

eral permit on the island side of the channel. Later, in the afternoon of August 31, 1916, respondent towed his pile-driver on a scow and anchored it somewhere below or down-stream from this fish-trap, the exact location being in dispute. Respondent alleged that the pile-driver was lawfully anchored in the stream outside the ordinary course and channel of vessels, with a light displayed upon it; that the "Potter" negligently departed from its usual course and swung around the end of the upper Burke fish-trap and headed for shore, continuing on that course until it ran into the pile-driver, cutting the scow in two and sinking it and the pile-driver with the appliances and equipment.

Appellant, in its answer, denied that the pile-driver displayed a light and that it was lawfully anchored in a proper part of the stream and outside the channel, but alleged that the pile-driver was unlawfully anchored in a part of the river suitable for navigation and in the usual course or channel of river steamers and of the steamer Potter; that the pile-driver was within the shadow of the mountains on the south shore and not visible until immediately before the collision, when the accident was unavoidable; that, as a result of the collision, the steamer Potter was considerably damaged and that appellant was compelled to expend $399 for repairs, which is claimed as damages and as a counterclaim. Respondent's evidence of the location of the pile-driver varied from 150 to 500 feet below the outer end of the upper Burke trap and from 150 to 300 feet inside the outer end of it, according to the estimates of different witnesses. Respondent offered evidence as to the usual course taken by the Potter after the upper fish-trap was constructed. One of respondent's witnesses testified that, before the upper fish-trap was put in, the Potter usually ran pretty close to the shore and ran about in

line where the pile-driver was located. Respondent offered evidence of a light burning on the pile-driver. The last time any witness claimed to have seen a light was at 2 a. m., fifty minutes before the accident, at which time he claims he saw some unknown person go aboard the pile-driver from a boat. No one was aboard the pile-driver at the time of the collision. The pilot and lookout of the Potter testified that there was no light on the pile-driver.

At the trial before a jury, the court, over appellant's objection, allowed evidence of the cost of raising the pile-driver, the cost of repairing it, and of profits which respondent claimed to have lost through the sinking of the pile-driver, and instructed the jury that it might allow damages for all of such items. At the close of the testimony, appellant made a motion as follows:

"The defendant now moves the court for a judgment in favor of the defendant and against the plaintiff, and that the jury be instructed to return their verdict in favor of the defendant on the issue of damages claimed by plaintiff, and that this cause be submitted to the jury upon the issue only of defendant's counterclaim against plaintiff for damages to its steamer Potter. This motion is based upon the following grounds: (1) The evidence offered in this cause does not make out a sufficient case to entitle the plaintiff to have the same submitted to the jury on the issue of plaintiff's claim for damages against the defendant. (2) There is no evidence of any negligence on the part of defendant. (3) The evidence affirmatively shows that the plaintiff was guilty of negligence which contributed to the accident. (4) The evidence affirmatively shows that the accident happened in the navigable channel of the Columbia river and that plaintiff's pile-driver was unlawfully anchored in said channel and constituted an obstruction forbidden by the law of the United States. (5) That there has been no justification shown by plaintiff for the presence of the pile-driver in the navigable channel of the Columbia river."

The appellant duly excepted to the overruling of this motion. The jury returned a verdict of $2,000 in favor of respondent.

Appellant assigns that the court erred, (1) in permitting plaintiff to testify, over defendant's objection, as to cost of raising the pile-driver and scow; (2) as to cost of repairs to the pile-driver and scow; (3) as to profits which he alleged he lost by reason of the sinking of his pile-driver; (4) in permitting plaintiff's witness Fred Houchen to testify, over defendant's objection, as to the value of the use of a pile-driver; (5) in giving instructions Nos. 9 and 11 to the jury; (6) in instructing the jury that, if they found for plaintiff, he would be entitled to the reasonable cost and expense of raising and repairing the pile-driver, engine, tools and appliances, and (7) that he would be entitled to recover the reasonable value of the services of the pile-driver and equipment during the time it was necessarily disabled, if he had opportunity to profitably employ same during said time; (8) in instructing the jury that, if they found for the plaintiff, he would be entitled to recover damages for items mentioned in (5), (6) and (7), together with the depreciation, if any, in the market value of the pile-driver and equipment from what it was prior to the collision; (9-16) in refusing defendant's requested instructions Nos. 4, 5, 7, 9, 10, 11, 12, and 13; (17) in instructing the jury that the right of navigation is paramount to other uses of navigable waters only so far as is necessary to navigate; (18) in refusing to instruct the jury that the operatives of steamboats have the right to operate them over any part of the Columbia river where the water is of sufficient depth to carry them, provided they act without wantonness and without malice and do not wilfully injure or destroy property anchored in the stream, after they discover its presence in the stream; (19) in

refusing defendant's requested instruction No. 8, which was to the effect that, if there were no lights upon the pile-driver, plaintiff was guilty of negligence; (20) in giving to the jury instruction No. 13, and particularly that part thereof to the effect that there is a presumption of law against a moving vessel; (21) in refusing defendant's motion for a directed verdict in its favor on the issue of plaintiff's claim for damages against defendant.

A vessel injured and sunk in a collision and which can be raised and repaired cannot be abandoned by the owner and treated as a complete loss. He must minimize the damages as far as possible. Respondent did not treat the pile-driver as a total loss, but demanded general damages. The complaint describes the property injured, its uses and purposes at the time of the injury. The complaint might have been more specific in alleging the different elements of damages, but it not having been moved against because of such generality, the damages must be considered such as were the necessary and direct result of the sinking of the pile-driver. The pile-driver was something that could not be procured in the market at any time; hence replacing it in condition as far as possible to do so, coupled with the depreciation in value and the loss of its use, if any, are the elements by which damage can be measured. Respondent, if not at fault, is entitled to be put in the same condition as he was before the injury, or compensated where that cannot be done. This would include the cost of raising and repairing the pile-driver, replacement of its equipment, its depreciation in value, and recovery for loss of its use; the total recovery under the pleadings not to exceed the value of the pile-driver and its appliances at the time and place of the injury. *West v. Martin*, 51 Wash. 85, 97 Pac. 1102, 21 L. R. A. (N. S.) 324.

Instruction No. 9 given by the court is as follows:

"You are instructed that the right of a vessel to navigate the waters of the Columbia river, so far as is reasonably necessary to navigate the same, is paramount to any other use of the navigable waters of said river, with this condition and limitation, however, that such navigation shall not be carried on wantonly or negligently, and shall be carried on with reasonable regard to the rights of others to use the waters of said river;"

while defendant's requested instruction No. 4 is as follows:

"In arriving at the question as to whether the defendant was negligent in the manner alleged in the complaint, I instruct you that the right to construct fish-traps in the waters of the Columbia river is at all times subordinate to the superior right of steamboats to navigate the same, and that the operatives of such steamboats have the right to operate said boats over any part of said stream where the water is of sufficient depth to carry the same. Provided they act without wantonness and without malice and do not wilfully injure or destroy property anchored in the stream, after they discover its presence in the stream."

Instruction No. 9 was proper, while requested instruction No. 4 was properly refused.

The question at issue is not the restricted use of the river; but the negligent exercise of the right to use the river. The defendant cannot escape liability by claiming an exclusive right to navigate anywhere, at all times, and under all circumstances, but must regard the rights of others when using the river in lawful navigation or anchorage. The effect of defendant's contention would be the exclusion of others from using the river, regardless of either the necessity of the circumstances or the requirements of careful navigation, and would be a claim for immunity from carelessness or negligence on account of a superior right.

The vital question remaining is whether the pile-driver maintained a proper light at the time of the collision. The court refused to give defendant's requested instruction No. 8, or to instruct the jury that failure to have a light on the pile-driver would be negligence. The statutes of the United States require an anchored vessel to carry a light. Act of August 19, 1890, art. 11, § 1; 2 Fed. Stat. Ann. 158; 26 Stat. L. 324:

"A vessel under one hundred and fifty feet in length, when at anchor shall carry forward, where it can best be seen, but at a height not exceeding twenty feet above the hull, a white light in a lantern so constructed as to show a clear, uniform, and unbroken light visible all around the horizon at a distance of (at) least one mile."

Facts as to which reasonable minds might differ are questions for the jury under proper instructions. The respondent contends that this matter was fully covered by the court's instructions Nos. 4, 5, 6 and 12. The instructions do not directly cover the point, except instruction No. 5, where the court recites the defendant's affirmative answer, but does not state any rule of duty respecting same. If the court had used the following, or words of similar import: "If you find from the evidence that plaintiff failed to maintain a proper warning light at the time of the collision, plaintiff would be guilty of contributory negligence and cannot recover," in place of the last sentence of instruction No. 5 which reads as follows: "This is known as the defense of contributory negligence;" or had given a separate instruction to the same effect and import, it would have been clear to the jury. If respondent's pile-driver had no proper light upon it at the time of the collision, it would be negligence *per se*. The requested instruction No. 8, or one of similar import, should have been given by the court.

Appellant contends that that part of instruction No. 13 which covers the presumption of law against a moving vessel is erroneous. The instruction is:

"You are further instructed, as a matter of law, that if a ship or steamer in motion or under way comes into collision with an anchored vessel, there is a presumption of law that it was the fault of the vessel in motion, unless as a matter of fact the anchored vessel was where she should not have been anchored; but whether she is in an improper place and whether properly or improperly anchored, the vessel in motion or under way must avoid her if it is reasonably practicable and consistent with her own safety and the vessel has an opportunity to do so. In the present case, if you find from the evidence that the pile-driver was properly anchored and in a proper place, then the burden is upon the defendant to show by a preponderance of the evidence that the collision occurred without fault on its part or through some fault of the plaintiff. The court instructs you that the question as to whether the said pile-driver of plaintiff was anchored in a proper place is a question of fact to be determined by you from the evidence, and all the attendant circumstances connected with the use for the purposes of commerce and navigation of the particular portion of the river where the evidence discloses she was anchored."

In the case at bar, the instrumentality which produced the injury was under the management of the defendant. An accident happened which in the ordinary course does not happen if those managing the instrumentality exercise proper care, and the presumption of negligence attaches; but this presumption may be rebutted by evidence that the anchored pile-driver was not in a proper place and was not maintaining a proper warning light. Therefore, the instruction is correct, with the exception that the court failed to instruct in regard to the maintenance of the warning light. Thus, if the second sentence of instruction No. 13 be amended to read as follows: "In the present case, if you find

from the evidence that the pile-driver was properly anchored in a proper place with a proper warning light maintained, then the burden is upon the defendant to show by a preponderance of the evidence that the collision occurred without fault on its part or through some fault of the plaintiff,'' or of similar import, it will be proper.

Most of the errors claimed are upon questions of fact for the jury, properly submitted, and need not be discussed.

Upon the ground of the foregoing errors indicated, the judgment will be reversed and the cause remanded for new trial.

MOUNT and MACKINTOSH, JJ., concur.

CHADWICK, J. (dissenting)—Aside from the question of law discussed in the opinion of the court, the motion for nonsuit should have been sustained. Furthermore, it is held that negligence is never presumed, and a reading of the record in the light of all of the concomitant facts and circumstances convinces me that the defendant was not negligent and that the plaintiff was guilty of contributory negligence. He negligently anchored his pile-driver in a place where the waters were navigable, and was in or very near the course of passing vessels. The Potter was maintaining its course from the Burke fish-trap to its beacon on the north shore of the stream. If the pile-driver had been anchored under the lee of the Burke fish-trap, as plaintiff contends it was, it would have been impossible for the Potter to have collided with it without lessening its speed and steering to the south; in other words, to have described a circle from the Burke fish-trap to the south instead of pursuing its direct course, as all of the testimony shows that it did. All of the physical facts—the very fact that there was an accident at the place it occurred

—shows beyond the power of plaintiff to dispute that he is mistaken when he says that he anchored his pile-driver below the Burke fish-trap and out of the channel. He anchored in a place where thirty-three feet is extreme low water, and if negligence is not to be presumed, if we are not to impute a willful design to defendant to run his pile-driver down and sink it, it seems impossible for the minds of reasonable men to hold the defendant to the entire blame for the collision.

If the ruling of the court upon the motion for a nonsuit is to be sustained, the case should be reversed upon still other grounds. The law is that the right of navigation is paramount. The corollary of this is that one who obstructs a navigable stream by anchoring a vessel in or near the course of passing vessels takes upon himself a burden of extraordinary care, and while, under some circumstances, it would be proper for a court to lay down the abstract proposition that, when a collision with an anchored vessel occurs, there is a presumption of law that it is the fault of the vessel in motion, it was error to so instruct in this case.

Instruction No. 13 is not fortified by counsel for respondent by the citation of any text or authority. He contents himself by saying, ''This instruction is simply a declaration of the doctrine *res ipsa loquitur*,'' and that a presumption exists in favor of a moored as against a moving vessel. We may well imagine a case where a court would put the burden upon a moving vessel as against one anchored in the daytime even in midstream or the fairway of a harbor. For, if it be there, the pilot of the moving vessel seeing and knowing, or having opportunity to see and know its presence, the court might properly instruct that a presumption of negligence arises against, or, more properly speaking, the burden of proof is upon, the moving

vessel. But this case affords a striking illustration of the fault of seizing upon some abstract proposition gathered from the whole body of the law and rehearsing it to a jury simply because there has been a collision between a moving and an anchored vessel.

The true rule is noticed in the majority opinion, but it is nullified by the approval of instruction No. 13. The rule governing this case is simple. Defendant had a right to navigate and its right was paramount to the right of others to use the stream for anchorage, with the limitation, however, that its right of navigation must not be so exercised as to wantonly or willfully injure other rights. That the pile-driver was anchored in navigable water is not disputed, and whatever the course of the Potter may have been, so long as it was in navigable waters its right was paramount. *People v. St. Louis,* 5 Gilman 351, 48 Am. Dec. 339; *Warner v. Ford Lum. & Mfg. Co.,* 123 Ky. 103, 93 S. W. 650, 12 L. R. A. (N. S.) 667; *Porter v. Allen,* 8 Ind. 1, 65 Am. Dec. 750; *Lewis v. Keeling,* 46 N. C. 299, 62 Am. Dec. 168; *Post v. Munn,* 4 N. J. L. 67; *Horn v. People,* 26 Mich. 221; *The John H. Starin,* 122 Fed. 236.

If this action had been brought under the maritime law upon a finding that the defendant was negligent, the damages would have been divided between the two vessels. *The Hilton,* 213 Fed. 997; *The Passaic,* 76 Fed. 460; *The Itasca,* 117 Fed. 885.

This being so, and there being no evidence, other than the happening of the accident, of a wanton or willful disposition—design, as some of the books put it— to destroy the property of plaintiff, it follows that instruction No. 13, which put a presumption of fact upon defendant that the collision occurred through the fault of the moving vessel, was error.

The opinion of the court is faulty for another reason.

It is said: "An accident happened which in the ordinary course does not happen if those managing the instrumentality exercise proper care, and the presumption of negligence attaches." We have held so many times that no presumption of negligence arises from the mere happening of an accident that it would be idle to assemble our cases, and to now say that an accident happened which in the ordinary course does not happen if those handling the instrumentality exercise proper care, is to absolutely destroy the defense of contributory negligence. For accidents do happen when those managing the more forceful instrumentality are in the exercise of reasonable care.

Furthermore, I protest against the holding that "the effect of defendant's contention would be to exclude others from using the river, regardless of either the necessity or the circumstances or the requirements of careful navigation, and would be a claim of immunity from carelessness or negligence on account of a superior right." Defendant has not contended that it had an exclusive right to navigate the stream, nor is there any testimony to show that the Potter was not carefully navigated. The contention of the defendant is that it has a paramount right to move its vessel in navigable waters, and that it cannot be charged with negligence unless the testimony shows conclusively, or by preponderating inferences, that it wantonly or wilfully wrecked the plaintiff's pile-driver.

The complaint was drawn on the theory that the pile-driver was totally destroyed, and general damages of $2,500 was asked. The court admitted evidence of the original cost of the pile-driver, which was about $6,000, and, over defendant's objection, admitted testimony to show the amount expended in raising and repairing the hull and the replacement of the machinery and tools that were lost beyond recovery. The testi-

mony should not have been received unless the complaint were amended and an opportunity given to plead to the issue tendered at the time. Upon new trial the complaint should be amended with leave to answer.

I think, too, that the opinion places a wrong construction upon the case of *West v. Martin*, 51 Wash. 85, 97 Pac. 1102, 21 L. R. A. (N. S.) 324. The rule there laid down is that the measure of damage in a case like this is the cost of repairing. Recovery is not to be limited by a sum "not exceeding the value of the pile-driver at the time and place of the injury," but by the cost of repairing, not exceeding the amount demanded in plaintiff's complaint. In this the trial court also erred, for the jury was instructed that the plaintiff might recover the cost of raising and repairing, not to "exceed the sum of $2,500 asked in the complaint, and provided the cost of repairing did not exceed the value of the pile-driver and equipment before the collision."

After plaintiff had outlined his case as contrary in fact and in law to the case made in the pleadings, the court should have excluded or stricken all testimony going to the value or first cost of the pile-driver. It was prejudicial and misleading, and, when considered in the light of the instruction, was an invitation to the jury to consider the first cost as a factor in the equation of damages. Its tendency must have been to enhance the damages over a normal or just recovery.

MAIN, C. J., concurs with CHADWICK, J.