No. 35,852

THE STATE HIGHWAY COMMISSION, etc., *Appellant*, v. CLARENCE G. STADLER, EMERY W. STADLER, and the NATIONAL MUTUAL CASUALTY COMPANY, *Appellees*.

(148 P. 2d 296)

Opinion filed April 8, 1944.

*Otho W. Lomax,* of Topeka, argued the cause, and *Marc Boss,* assistant attorney general, and *Edward Rooney,* of Topeka, were on the briefs for the appellant.

*Robert E. Russell,* of Topeka, argued the cause, and *Clayton E. Kline, M. F. Cosgrove* and *Balfour S. Jeffrey,* all of Topeka, were on the briefs for the appellees.

The opinion of the court was delivered by

PARKER, J.: In this action the State Highway Commission seeks to recover damages for the destruction of a bridge on a public highway. The judgment in the district court was for the replacement cost of the bridge less depreciation for the period of time it had been in use. The commission appeals.

The defendants make some complaint regarding rulings of the trial court in permitting the plaintiff to amend its petition after the trial and with respect to the legal effect of such amendments but, since there was no cross-appeal, those complaints will be disregarded and the pleadings will be treated as if no amendments had been made.

Allegations of the amended petition can be summarized in substance as follows: On December 13, 1939, plaintiff owned a steel and wood bridge, referred to as a "pony truss" pin-connected span resting on masonry abutments, which was a part of State Highway K-8 and located over and across Middle Beaver creek in Smith county and had, as authorized by G. S. 1939 Supp. 8-5,123, prohibited traffic thereon of a weight of more than six tons; on such date a large semitrailer truck, owned and operated by defendants, Clarence G. Stadler and Emery W. Stadler, who were insured by defendant, National Mutual Casualty Company, while loaded greatly in excess of the amount permitted by the commission under its weight posting limits for the bridge in question, was negligently and carelessly driven into and upon such bridge with the result it was

broken, bent, demolished and ruined to the commission's damage in the sum of $2,094.49.

Defendants' answer denied negligence in the operation of its truck and alleged the bridge because of its age and bad state of repair collapsed without fault on the part of the defendants or their driver, but, in their opening statement although denying other acts of negligence alleged in the amended petition they admitted their truck was driven upon the bridge while loaded in excess of the weight limit permitted by the commission and conceded their action in that respect caused the collapse of the bridge and injury thereto about as alleged by plaintiff in its amended petition.

The cause was submitted to the court, a jury having been waived. At the trial the plaintiff's undisputed evidence disclosed the bridge had recently been repaired, it was serving the needs of the public, its collapse was caused by the operation of defendants' truck and the only way to replace it was to build a new structure. There was evidence from which the trial court might have concluded the collapse of the bridge was caused by the truck, either as it approached from the south on the wrong side of the road and struck the southwest batter post or as it was driven upon such bridge loaded in excess of the weight it would carry without collapsing. In fact the last situation was admitted by defendants. Experts for both parties testified as to cost of replacement of the bridge, defendants' witness estimating that cost at $1,633.31 and plaintiffs' witnesses from $1,655.80 to $2,084.54. Defendants' expert witness also testified the life of the structure, which was 49 years old on the date of the accident, had a range of from 70 to 100 years. Assuming its life to be 100 years and basing allowance for depreciation on lumber and steel in the structure on the number of years such materials had been a part of it, he estimated, after deducting the amount of depreciation found by him, the present value of the bridge to be $981.24. Assuming its life to be 70 years, and using the same method, he estimated that value to be $745.59.

On the evidence just related and considerable other testimony, to which we have deemed it unnecessary to refer, the trial court found the cost of replacement of the bridge on the date of its injury to be $1,700, deducted $800 for depreciation on the theory it had been in existence 49 years, and rendered judgment in favor of the commission for $900. As a part of its judgment it expressly found the action was purely a statutory proceeding and refused to allow

any recovery whatsoever for consequential damages claimed by the petition. The commission then filed a motion for a new trial and when it was overruled gave notice of appeal.

Briefly stated, appellant's first contention is that the provisions of G. S. 1943 Supp. 8-5,124 do not limit its right to recover damages for injuries to its highways and highway structures. In other words that it has a common law right of action against those who negligently injure the highways and highway structures of the state and may sue for and obtain such damages as might be recoverable in a common law action notwithstanding the legislature has seen fit to enter the field and by legislative fiat decree what its right of recovery might be under such conditions and circumstances. We do not believe appellant's position is well taken. Reference to earlier statutes dealing with the same subject may be helpful in reaching a proper conclusion. In 1929 the legislature enacted chapter 84, section 5 of which reads:

"Any person who shall willfully or negligently damage a highway shall be liable for the amount of such damages and the state highway commission may prosecute claims or suits for the amount of such damage."

Certainly after the enactment of this statute it must be conceded whatever common law cause of action existed in favor of a governmental agency for negligent destruction of its highway, and it must go unquestioned that a bridge is a portion of the highway (*Cloud County v. Mitchell County,* 75 Kan. 750, 757, 90 Pac. 286; G. S. 1935, 77-201 [5], and G. S. 1941 Supp. 8-126 [s]), was superseded by the new statutory cause of action for negligence provided for therein. Later the legislature passed Laws of 1931, chapter 244, section 7, prohibiting the overloading of bridges and imposing civil liability for violations of its provisions recoverable by the authorities charged with the maintenance of highway structures. This statute was in no sense a limitation of the negligence statute theretofore enacted and merely imposed an additional liability on users of the highway in cases where they used such structures when their vehicles were loaded in excess of the weight allowed by its provisions. In 1937 both of the statutory enactments just referred to were repealed by the Laws of 1937, chapter 283, known as the Uniform Act Regulating Traffic on the Highways and substituted in their place was section 124, now G. S. 1943 Supp. 8-5,124, which reads:

"(*a*) Any person driving any vehicle, object, or contrivance upon any highway or highway structure *shall be liable for all damage* which said *highway*

*or structure may sustain as a result of any illegal operation,* driving, or moving of *such vehicle,* object, or contrivance, *or as a result of operation, driving, or moving any vehicle, object or contrivance weighing in excess of the maximum weight* in this act but authorized by special permit issued as provided in this act. (*b*) Whenever such driver is not the owner of such vehicle, object, or contrivance, but is so operating, driving, or moving the same with the express or implied permission of said owner, then said owner and driver shall be jointly and severally liable for any such damage. (*c*) Such damage may be recovered in a civil action brought by the authorities in control of such highway or highway structure." (Emphasis ours.)

The language of this new statute is broad and comprehensive. On analysis, it can be said it permits the commission to sue in its own name and recover all damages which the highway and/or structure may sustain as a result of overloading and/or any illegal operation, driving or moving of any vehicle, object or contrivance driven upon the highway. Appellant argues its provisions do not contemplate negligence and that the only basis for recovery thereunder is overloading. Here again appellant's position is not well taken. True enough, the terms of the new act do not specifically impose liability for negligence nor is the word "negligence" to be found in the language used therein. But that is no justification for a claim that negligence was not contemplated by its provisions. The language "illegal operation, driving or moving of such vehicle, object or contrivance" not only contemplates acts of negligence but embraces in its terms so many negligent acts that it is difficult to imagine any illegal operation of a vehicle on the highway which would not constitute negligent operation of such vehicle if injury to the highway resulted, and rare indeed would be the occasion where negligent operation of such vehicle would not be illegal. For illustration, the acts alleged and relied on by the plaintiff in its petition as constituting common law negligence were all illegal under the present act, namely, driving the truck on the wrong-side of the highway (see G. S. 1943 Supp. 8-537), driving at a rate of speed greater than reasonable and proper (see G. S. 1943 Supp. 8-532), driving at a reckless rate of speed (see G. S. 1943 Supp. 8-531). It should be added the commission of one or all of such acts if established by the evidence was sufficient to authorize the recovery of damages under its provisions. We have no difficulty in concluding that the present statute was intended to be all-inclusive and embraces within its terms all the acts for which the driver or owner of a vehicle might be civilly liable to the commission in the event

while driving on the highway he damages a highway or highway structure. The common law right of action has been superseded by the statutory one and so far as acts of negligence are concerned the commission's right of action is limited to such negligent acts as amount to illegal acts under the provisions of the Uniform Act Regulating Traffic on the highways. Common law negligence may now give rise to the statutory cause of action if the act relied on is illegal but it no longer gives appellant the right to rely upon a common law cause of action for negligence. It follows the trial court's finding the appellant was limited to the relief authorized by the statute and was not entitled to recover anything other than provided for therein was proper.

Reasons given for the trial court's decision become immaterial and need not be here considered since it rendered a correct judgment under the facts and the law. (*City of Wichita v. Boles,* 156 Kan. 619, 135 P. 2d 542; *Nebraska Hardware Mut. Ins. Co. v. Johnson,* 156 Kan. 756, 137 P. 2d 125.) Nor is it material, since recovery based on overloading was allowed, whether its finding there was no evidence to sustain acts of negligence relied upon by appellant in its petition was erroneous. Recovery under the provisions of the statute is the same irrespective of the character of the acts found to have resulted in the injury. No prejudice resulted to the appellant from such ruling and it would serve no useful purpose to review the evidence to determine its propriety.

We now direct our attention to appellant's contention the trial court erred in applying an improper measure of damages to the structure itself and in rendering judgment for replacement cost less depreciation. Both appellant and appellees allege there is almost lack of authority on the subject in a case where recovery for destruction of a highway or highway structure is sought under the provisions of a statute, such as ours, where it is provided the persons causing the injury shall be responsible for all damages which such highway or structure may sustain as a result of conduct prohibited by its language. Our investigation of the authorities discloses they are correct in their statement. Many cases could be cited dealing with the question of damages recoverable for negligent destruction of toll bridges, railroad bridges and other privately owned structures, also for negligent destruction of public structures where no statute fixing liability is involved. Some are referred to by the parties in support of their respective claims. We find them interesting

but because of fundamental differences they are of little help in determining our problem. For the same reason, general principles dealing with the subject and announced in well known legal treatises must be read with the thought in mind that the factual situations involved in each case may vary or change their force and effect. They are, however, interesting as well as indicative and should be noted. Relating to highways 25 Am. Jur. 637, § 341, states the general rule to be as follows:

"The damages recoverable are measured by the expense to which the municipality or other public agency has been put by the act of the defendant and do not include mere inconveniences in the use of the road which do not make it more expensive to be kept in repair."

With respect to bridges the rule stated in 11 C. J. S., 1137, § 100, reads:

"It has been held that the measure of damages for injury to a bridge is usually the amount which must necessarily be expended in repairing or restoring it, but in some jurisdictions the party is, by statute, liable to greater damages, as will appear from an examination of statutory provisions and the decisions cited infra this note. . . ."

While in 8 Am. Jur. 973, section 84, it is stated thus:

"The measure of damages to the owner of the damaged bridge is the cost of repairs necessitated by the injury received, together with a reasonable sum, in case of a toll bridge, for the loss of net profits during the time the bridge cannot be used. Additional costs, however, due to delay or other action by the owner cannot be recovered in such a case."

Fortunately we are not required to rely upon cases where dissimilar factual and statutory situations exist or upon general principles as stated in law treatises in order to find an expression on which to rely as a precedent in determining the proper measure of damages to be applied in the case at bar. One of the very few cases, in fact the only case we have been able to find, where the court was considering that question under the terms of a statute similar to the one now under consideration is *State Highway Comm. v. American Mut. Liability Ins. Co.*, 146 Kan. 187, 70 P. 2d 20. There the court was discussing the force and effect of Laws of 1931, ch. 244, sec. 7 (G. S. 1935 68-152[f]), dealing solely with the question of damages resulting to a bridge from excess loading and which, as hereinbefore indicated, was later repealed and included in the language of the statute involved here. To be specific it can be said the language there used with respect to the measure of damages recoverable was identical with that to be found in the present one. In the opinion in that case

Mr. Chief Justice Dawson, in indicating the views of the court on the subject, said:

"It is next argued that the estimated replacement cost of the bridge was not the proper measure of damages. This particular bridge was out of date, but it did serve the needs of the locality for light loads, and the manner of its destruction was inexcusable, if not criminal. Under the cricumstances, this court is not disposed to lay down any hard-and-fast rule as to the measure of damages. Ordinarily the measure of damages for injury to a bridge is the cost of repairing it (*Sewall's Falls Bridge v. Fisk & Norcross,* 23 N. H. 171; *West v. Martin,* 51 Wash. 85, 97 Pac. 1102, 21 L. R. A., n. s., 324). Included in plaintiff's claim for damages is an item of $582.40 for expense in maintaining a detour of two miles while the new bridge was being constructed. But the statute only allows a recovery for the damage to the bridge itself—'damage so caused to any such structures may be recovered' is the language of the statute. Nothing under this statute is recoverable as consequential damages."

It may be, as suggested by appellees, that the foregoing language was intended as a bare statement of the general rule and that it left open and undetermined what the cost of repairing a bridge included when it was considered as the measure of damages to be applied in determining the amount recoverable for the injury. We doubt it, notwithstanding the statement the court was not disposed under the circumstances to lay down any hard-and-fast rule as to the measure of damages. Be that as it may, and conceding the point without laboring it further we have determined without much perturbation, irrespective of what the rule may be elsewhere, that under our present statute which imposes liability for all damages which a highway and/or highway structure may sustain, the proper measure of damages is the actual cost of replacement of such highway and structure in the condition it was in at the time the injury occurred.

We conclude the rule just announced is applicable with the full realization it is not entirely in accord with our decisions, fixing the measure of damages in cases where there is no statute. The situation there is not comparable to the one here involved. Highways and highway structures, when it comes to fixing their actual value, stand in a class by themselves. Their value is something wholly unascertainable by any fixed standards and depends upon a combination of circumstances and conditions. To illustrate, actual value of a bridge to the public depends not only on its original cost, its life expectancy, its present condition and state of repair, and the cost of its replacement, but upon other circumstances, among which are the conditions under which it is being used, the extent of that use, the location of other structures which might or could be used by the

traveling public in its stead, the possibility of its removal by the authorities in charge, the availability of public funds for its replacement and the likelihood of its ever being rebuilt if once torn down and destroyed. All these things and others, similar in character, which we might mention if time and space would permit are elements to be considered. It was because of them the legislature saw fit, once liability for the prohibited act was fixed and injury resulted, to specifically designate the liability therefore was *all damages sustained*. We think our construction that the measure of damages recoverable under the statute is the actual replacement cost of the illegally destroyed structure at the moment of its destruction, is required by the language used in the statute, complies with the intent of the legislature in enacting it, and is the fairest and most equitable rule that could be adopted under all existing circumstances and conditions, keeping in mind the rights of both the public and individual. Other decisions not determinative of our views but which support them, and the opinions of which contain additional reasons not here related for the adoption of the rule announced are *Topsham v. Lisbon,* 65 Maine 449; *J. W. Paxson Co. v. Board of Chosen Freeholders,* 201 Fed. 656; *West v. Martin,* 51 Wash. 85, 97 Pac. 1102; 21 L. R. A., n. s., 324.

Appellees in their brief suggest, in fact concede, a fair measure of damages in a situation where a structure is injured and only partially destroyed is the actual cost of repair, but insist where the structure was wholly destroyed, the fair measure of damages should be actual replacement cost less an allowance for depreciation. We see no room for such distinction. The statute makes none and the purpose sought to be accomplished by its enactment does not justify it. See *Southern Ry. Co. v. Black Diamond Collieries, Inc.,* 9 Tenn. App. 225, wherein it was held:

"The measure of damages for a bridge wholly destroyed and one partially destroyed should be the same as there is no reason for a distinction, the difficulty of restoration in kind being only a matter of degree." (Syl. ¶ 8.)

Measured by the rule heretofore announced, it is apparent the trial court erred when it rendered judgment for replacement costs less depreciation. It should be noted, however, that it specifically found replacement costs of the structure to be $1,700. This finding was based upon substantial competent evidence and in the absence of an affirmative showing to the contrary, which is not disclosed by the record, we have no right to assume the trial court's computation

excluded items which under the rule could be properly classified as replacement costs. Therefore, its finding with respect to the replacement costs of the structure at the time of its injury must stand, and its judgment would have been proper except for the deduction of the amount allowed for depreciation.

Appellant's final complaint is that the court erred in refusing to tax against the opposing party costs of out-of-the-county witnesses who were subpoenaed prior to the trial and attended it while in progress. Briefly, the answer to the appellant's claim is that the conditions of the statute (G. S. 1935, 60-2810) under which witness fees from outside the county might be taxed against any opposing party were not met either before, during or after the trial.

We conclude the judgment should be reversed and the cause remanded with instructions to the trial court to render judgment in favor of appellant for its damage in the sum of $1,700. It is so ordered.