No. 36,869

IVAN GOODLOE, *Appellant,* v. JO-MAR DAIRIES COMPANY, *Appellee.*

(185 P. 2d 158)

CLARK A. WALLACE, judge. Opinion filed October 4, 1947.

*W. B. Hess,* of Pratt, argued the cause, and *Paul R. Wunsch,* of Kingman, was with him on the briefs for the appellant.

*Wayne Coulson,* of Wichita, argued the cause, and *Howard T. Fleeson, Homer V. Gooing, Paul R. Kitch, Manford Holly* and *Dale M. Stucky,* all of Wichita, were with him on the briefs for the appellee.

The opinion of the court was delivered by

PARKER, J.: This is an action to recover damages for personal injuries sustained by a pedestrian as a result of a collision with a motor truck. Plaintiff appeals from an order sustaining defendant's demurrer to the evidence.

There is no issue with respect to the pleadings, hence allegations to be found therein need not be related at length. For our purposes it can be said the petition alleges that plaintiff was struck and severely injured by defendant's truck while it was being driven by one of its employees in a northerly direction on the west side of the center of Main street in the city of Pratt and charges that his injuries, therein fully described, resulted from several particular acts of negligence on the part of defendant, each and all of which are averred to be the direct and proximate cause of his condition. Defendant's answer denies any and all negligence, charges that the col-

lision and plaintiff's injuries are the proximate result of his own negligence and alleges that even if defendant was guilty of negligence in any particular whatsoever the plaintiff was likewise guilty of negligence contributing to the cause of his injuries. The reply is a denial of all new matters set forth in the answer.

With issues thus raised the case came on for trial to a jury. After the plaintiff had adduced his evidence and rested defendant demurred thereto. The trial court sustained the demurrer upon two grounds: (1) That the evidence was insufficient as a matter of law, and (2) that it disclosed that the plaintiff was guilty of negligence which was the proximate cause of his injury.

In our discussion and decision of the issues we shall speak of the parties as they appeared in the court below.

At the outset in support of his position on appeal plaintiff argues the judgment shows error on its face. He argues the trial court found defendant was guilty of no negligence and then held plaintiff was guilty of contributory negligence with the result the grounds for the decision as rendered are wholly inconsistent, the first being contrary to the second. The argument misconceives the import to be given the second ground of the trial court's decision which we construe to be that plaintiff's negligence precluded his recovery but even so the contention lacks merit. The well-established rule is that if the trial court renders a correct judgment under the facts and the law, a judgment will not be disturbed merely because wrong reasons are given for its rendition. (*City of Wichita v. Boles,* 156 Kan. 619, 135 P. 2d 542; *Egnatic v. Wollard,* 156 Kan. 843, 846, 137 P. 2d 188; *Nebraska Hardware Mut. Ins. Co. v. Johnson,* 156 Kan. 756, 137 P. 2d 125; *State Highway Comm. v. Stadler,* 158 Kan. 289, 294, 148 P. 2d 296; *Greep v. Bruns,* 160 Kan. 48, 60, 159 P. 2d 803 and *Arensman v. Kitch,* 160 Kan. 783, 792, 165 P. 2d 441.) We therefore turn to the record to see if it upholds the judgment.

The factual picture disclosed by the evidence up to the moment just prior to the occurrence of the accident resulting in plaintiff's injuries is not a subject of dispute between the parties and can be stated thus:

On October 1, 1945, the plaintiff was 48 years of age, he had a good average income and he was strong and healthy both in mind and body. At that time, and for several years prior thereto, he had engaged in the auto repair business and the selling and servicing of farm implements in the city of Pratt. His place of business was

located on the east side of the five hundred block on South Main street in the heart of the business section of that city, about ninety feet north of where such street intersects with Sixth street.

South Main street, as the name indicates, is the main business street of Pratt and runs north and south. It is one hundred feet wide from the lot lines with sixteen feet of sidewalk and dirt parking strip on each side. Its remaining sixty-eight feet is paved with brick. The five hundred block has no marked crosswalks and is bounded on the north by Fifth street and on the south by Sixth street. There is an electric stop-and-go signal at the intersection of Fifth and Main, but none at the intersection of Sixth and Main.

Plaintiff was accustomed to crossing Main street in the middle of the block between the intersections at Fifth and Sixth streets and had never had an accident while doing so.

The day of October 1, 1945, was bright and clear. The streets of the city were dry. On the morning of that day plaintiff had been doing some work on an automobile which was parked diagonally in the middle of the block on the west side of Main street and almost directly across the street from his place of business. Just as he was completing that work one of plaintiff's friends, a Mr. Don Heading, happened to be passing by and stopped to talk to him. Just to the south of the car on which plaintiff had been working was a parked truck having a long wheel base and a thirteen foot bed but there was nothing about it, or anything else on Main street at the time, which interfered with the vision of anyone who had occasion to look down such street to the south. The sun was shining brightly. The two men visited briefly for a moment. Plaintiff said that he was busy, had all he could do, and that he had just told some man that if he would bring his car around to the back end of the shop he would fix it. At about 10 a. m. Heading, who was going south, turned to leave. As he did so he saw plaintiff start to walk east across the street, he observed him light a cigar when about two feet from the rear of the parked truck and then walk on to the east. Just as the witness reached a spot on the west sidewalk, eight or ten feet to the south of the parked truck, he heard a crash and immediately turned around to see what had happened.

From this point on the story is not so clear and had best be stated in record form. As that is done it is well to remember that except for the driver of the defendant's truck and the plaintiff, to whom reference will be made later, there were no eyewitnesses to the im-

pact between plaintiff and the truck, and that only two persons testified as to what took place immediately thereafter.

One of such witnesses, Don Heading, testified as follows:

"When I was about 8 or 10 feet south of the Chevrolet truck I heard a noise just like two trucks going together. I looked around and saw Goodloe spinning. I dropped what I had in my arms and run out to him. I saw him falling. Goodloe was going east and the truck hit him and he was just spinning and fell a little bit to the northwest. . . ."

*Cross-examination—*

"Goodloe had lit his cigar before he ever started across the street. That there was no question about that. That he was in plain view of the accident and that as he heard the impact and turned around he saw Mr. Goodloe right at the side of this truck spinning around."

*Redirect Examination—*

"That the truck hitting Goodloe was a pick-up, that the large truck parked on the west side of the street had a flat bed on it, that he could easily see over the bed, that Goodloe, was hit by the front panel of the door; that is, right there where the glass rolls up and there is the back panel."

The record discloses additional testimony on the part of this same witness in the form of questions and answers. We are not told just when, during the course of his examination, this testimony was elicited; whether on direct, cross- or redirect examination. However, it explains and clarifies other statements made by Mr. Heading and for that reason will be quoted. The record on this particular phase of the evidence reads:

"Mr. Heading testified in detail as to what he saw and his testimony in that regard was as follows:

"Q. Now when you heard the impact and turned, what was the first thing you saw? A. I saw Mr. Goodloe right at the side of this truck, right about the door panel spinning.

"Q. He was spinning right about the door panel? A. Yes, sir.

"Q. Now from your position there, were you able to tell what part of the side of the truck struck what part of Mr. Goodloe? A. Well, I would say he either hit the front part of the door panel where the windshied glass joins with the door post or the glass, or the door panel; that is where the door shuts back and he hit on the right side of the head, I guess it was about here (indicating) on the right side of the face (indicating).

"Q. On the right side, you are indicating? A. Yes.

"Q. That is the position you are indicating? A. On the right side.

"Q. In your opinion he was struck by the right side of the truck at about the door of the cab? A. Yes sir.

"Q. The left side of the truck? A. Yes, the left side of the truck.

"Q. About even with the door of the cab? A. Yes, that is right.

"Q. As to whether it was the front post or the back post, you don't know? A. I don't know which one hit him; but it was right at the cab door, one door panel or the other.

"Q. Can you tell what it did to him? A. He hit the truck and it caused him to spin and he was thrown slightly to the west and in a prone position."

A further interrogation on direct examination of such witness and its answer should be noted. They read:

"Q. Could you observe whether or not he was struck by the projecting mirror of the truck. A. Well, there was something at that time on the left side of the truck and it hit his face. I don't know whether he was cut by hitting the mirror or whether he hit the door. I thought he cut his face on the door handle as he went down."

The second witness to whom we have heretofore referred, one C. A. Schoole, testified on direct examination:

"That he was working for the John Deere people in the John Deere building on South Main Street. That on October 1, 1945 at 10 o'clock that he was waiting on a customer and looked out on the street and saw a man spinning and fall to the ground, as a pickup truck passed him."

On cross-examination, in response to a question whether Goodloe's body was thrown in a westerly direction from the truck:

"Yes, that is where it was; whether it was thrown or fell,—that is where the body was laying."

On redirect examination:

"Just turned around and went down as he turned."

The plaintiff did not call Mr. Sellers, the driver of the truck, as a witness. However, he did use Roy Peak, the deputy sheriff, who was permitted, without objection, to testify regarding the conversation he had with that individual immediately after the accident. Therefore, such testimony must be given consideration. On direct examination Mr. Peak stated that in response to his inquiry as to how the accident happened the driver said "I seen the man and I thought he was going to get right in the cab with me." The record with respect to his cross-examination on such matter reads:

"Q. Didn't you and Mr. Sellers have a conversation as to what point of the truck was struck by the plaintiff in this case as he walked into the truck? A. I tried to re-enact the accident with him and I got my head in the cab door just like it was; I stuck my head in there at the angle and everything the way it was and re-enacted the scene and the side of the door showed,—when I put my head on the inside of it there I called his attention to it. I said it looks like a man's head hit here (indicating). There is the print of a man's head.

"Q. He mentioned to you, did he not, that he thought the fellow was going to stop when he saw him;.didn't he say that he looked; that he was going slow and he thought the man was going to stop and the fellow came right on in? A. Well, it kind of left that impression.

"Q. That he first thought the fellow was going to stop and then he just kept coming. That was the substance of that conversation. A. Yes.

"Q. Let me direct your attention a little more to the matter I was asking you about; Isn't it true that the substance of your conversation at the latter part of this same conversation was that you pointed out to him the imprint on the door? A. Yes.

"Q. Which you told him you thought had been made by the man's head. A. Yes, sir.

"Q. And he looked at it, and he agreed with you that that was the impression made by the man's head? A. Yes.

"Q. As the man walked into the side of the truck. A. Yes.

"Q. All of that conversation took place in substance did it not. A. Yes, sir."

Other evidence material to the issues can be briefly summarized. Several witnesses testified as to where plaintiff was lying after the accident. They placed him all the way from four to eight feet west of the center of Main street. Others gave their version of where the truck stopped. They located it all the way from twenty to forty feet beyond the point of impact on the east side of the street. Some stated its left hind wheel was near the center line of the street but the record discloses no testimony on the part of any witness placing the truck, at any time, on the west side of such line. At least one, perhaps two witnesses, examined the truck and stated their examination disclosed that its brakes were very bad. In fact one witness went so far as to say the truck had no brakes at all.

It will be observed, we have made no mention of plaintiff's injuries which, it can be said, are conceded to be serious and permanent. The reason for failing to do so is obvious. They are not involved in ruling on the demurrer to the evidence.

Likewise, it may be noted, we have refrained from referring to plaintiff's testimony in his own behalf. That comes from the fact that he is now suffering from amnesia and testified that he has no recollection of the events happening immediately prior to the accident.

It is, of course, elementary that on demurrer we give full credence to the evidence challenged and give the party adducing it the benefit of all inferences and conclusions to be drawn from the surrounding facts and circumstances. Plaintiff points out we have even said

that in testing its sufficiency we do not weigh the evidence or compare testimony of the same witness on direct or cross-examination but accept that version which is most favorable to the party who relies upon it as sustaining his cause of action. Indeed that is the rule. However, it does not follow, as suggested by plaintiff, that because an answer to a question propounded to a witness is seemingly inconsistent with his answers to other questions, but in fact is not actually so by reason of the physical facts and circumstances to which he has testified or his subsequent explanation of incongruities apparent in his testimony, that we are bound to accept the one answer and disregard the others. In that situation it becomes our duty to compare statements made by the witness and reconcile them if possible to do so. The liberal doctrine prevailing in this jurisdiction with respect to the sufficiency of evidence on demurrer is not to be extended to the point where it requires an obviously erroneous construction of the testimony of any witness.

Thus in the instant case, while it is true the witness, Heading, on one or two occasions stated that the defendant's truck hit the plaintiff, it is apparent from an examination of his entire testimony, herein set forth at length, he did not by those statements intend to imply the defendant's truck ran into, against, upon or over the plaintiff but actually meant that the plaintiff, while crossing the street in the middle of the intersections between Fifth and Sixth streets, collided with such truck, the point of impact being the left side door of that vehicle. That this was the true situation is evidenced by all the other evidence. Therefore, we shall proceed with our disposition of the contentions advanced with respect to negligence of the parties on the premise that phase of the factual situation has been conclusively established as herein indicated.

Conceding, at the outset, that from our legion of reported negligence cases there may be found decisions in which something has been held or said that can be regarded as tending to support the respective contentions advanced by each of the parties it must be kept in mind that every negligence action is first of all dependent upon the factual situation disclosed by the record on which it is decided. There are, of course, certain fundamental principles of law applicable to negligence actions generally but in the final analysis the facts of each particular case determine its decision when tested by those principles.

Most of the legal rules having application to the facts disclosed

by the record in the case at bar are fully set forth in two of our outstanding automobile negligence cases, consistently followed and approved by this court in subsequent decisions. We have reference to *Hendren v. Snyder,* 143 Kan. 34, 53 P. 2d 472, and *Crowe v. Moore,* 144 Kan. 794, 62 P. 2d 846. In each such decision it was said:

"The simple fact that there was a collision and someone was injured is not of itself sufficient to predicate liability. (*Zinn v. Updegraff,* 113 Kan. 25, 35, 213 Pac. 816; 9 Blashfield Cyclopedia of Auto Law, 399.) It is familiar law that negligence is never presumed; it must be established by proof. Like any other fact, it may be established by circumstantial evidence. (*Mayes v. Kansas City Power and Light Co.,* 121 Kan. 648, 249 Pac. 599.) But the circumstances 'relied on must be of such a nature and so related one to the other that the only reasonable conclusion to be drawn therefrom is the theory sought to be established.' (*Cornwell v. O'Connor,* 134 Kan. 269, 271, 5 P. 2d 861.) 'A fact is not proven by circumstances which are merely consistent with its existence.' (*Canestro v. Joplin-Pittsburg Rld. Co.,* 135 Kan. 337, 341, 10 P. 2d 902.)

"In *Whiteker v. Wichita Rld. & Light Co.,* 125 Kan. 683, 265 Pac. 1103, it was held:

"'A finding of negligence cannot rest on mere conjecture, but must be established by competent proof.' (Syl. ¶ 1.)

"See, also, *Beeler v. Railway Co.,* 107 Kan. 522, 192 Pac. 741; *Norman v. Railway Co.,* 101 Kan. 678, 168 Pac. 830, and *A. T. & S. F. Rly. Co. v. Toops,* 281 U. S. 351, reversing *Toops v. Atchison T. & S. F. Rly. Co.,* 128 Kan. 189, 277 Pac. 57."

Almost identical statements appear in the more recent case of *Miller v. Gabbert,* 154 Kan. 260, 266, 118 P. 2d 523.

To the foregoing canons of law we might add two more which are applicable here. One, so universally recognized as to almost preclude necessity for citation of authorities, is that negligence is not actionable unless it is the proximate cause of injury (see West, Kansas Digest, "Negligence," § 56). The other, similar in character, but having particular reference to recovery of damages for injuries sustained in motor vehicle collisions is that mere violations of an ordinance or statute regulating traffic, such as excessive speed, defective equipment, driving down the center of the highway, or other matters of a similar nature, are not sufficient to make the driver of an automobile guilty of actionable negligence in an action involving a collision unless it appears from the evidence that such violations contributed to the accident and were the proximate cause of the injuries therein received. For some of our important, and recent cases on the subject, see: *Williams v. Electric Railroad Co.,* 102 Kan. 268, 170

Pac. 397; *Barshfield v. Vucklich,* 108 Kan. 761, 197 Pac. 205; *Phillips v. Meyer Sanitary Milk Co.,* 129 Kan. 45, 281 Pac. 895; *Clark v. Southwestern Greyhound Lines,* 148 Kan. 155, 79 P. 2d 906; *Frakes v. Travelers Mutual Cas. Co.,* 148 Kan. 637, 84 P. 2d 871; *Eldredge v. Sargent,* 150 Kan. 824, 96 P. 2d 870; *Jilka v. National Mutual Cas. Co.,* 152 Kan. 537, 106 P. 2d 665; *Wright v. Nat'l Mutual Cas. Co.,* 155 Kan. 728, 129 P. 2d 271, and *Curtiss v. Fahle,* 157 Kan. 226, 139 P. 2d 827. See, also, West's Kansas Digest, "Automobiles," 201 (1, 2, 3, 4) ; Hatcher's Kansas Digest, "Automobiles," §§ 10 and 15.)

With fundamental and applicable rules thus established we turn to the record.

Plaintiff himself states that the negligence charged in his petition and on which he relies for recovery is that defendant (1) was driving on the wrong side of the street; (2) was driving too fast under the circumstances; (3) did not keep a proper lookout; (4) failed to sound his horn; (5) had no brakes on his truck; and (6) failed to exercise due care.

Ground 4 can be disposed of summarily. There is nothing in the record which supports or sustains it.

Summary disposition can also be made of Grounds 2 and 5. Admitting the truck had no brakes and conceding without deciding that such vehicle was being driven at an excessive rate of speed, for plaintiff's own evidence was to the contrary, neither excessive speed nor defective brakes contributed to plaintiff's injuries or were the proximate cause thereof. The truck had passed plaintiff before the collision and under all the facts and circumstances disclosed by the evidence it is apparent the accident would have happened anyway.

The only evidence to sustain Ground 1 is that when the truck stopped its left hind wheel was within a short distance of the center line of Main street. That fact does not justify an inference it was ever on the west side of the center street line and, of a certainty, it does not sustain plaintiff's claim it was being driven on the wrong side of the street.

The sole support for Ground 3, aside from the fact the accident occurred, is to be found in the witness Peak's statement that the driver of the truck told him he saw the man and thought he was going to get right in the cab of the truck. That does not establish negligence on the part of a driver in failing to keep a lookout in a situation where, as here, under the statute, G. S. 1945 Supp. 8-557, he had a right to assume a pedestrian crossing a street between inter-

sections would yield the right of way. In the absence of evidence showing the driver of the truck had reasonable cause to believe the plaintiff was not going to yield the right of way he is not guilty of negligence simply because the accident occurred.

So far as plaintiff's claim with respect to Ground 6 is concerned, he fails to point out, and we are unable to discern any evidence disclosing a specific or definite act on the part of defendant's driver showing lack of due care. In fact to reach that conclusion he founds one inference upon another. This court has repeatedly held that presumptions or inferences based upon presumptions or inferences are insufficient to establish negligence. (*Schmidt v. Twin City State Bank,* 151 Kan. 667, 100 P. 2d 652; *McKenzie v. New York Life Ins. Co.,* 153 Kan. 439, 112 P. 2d 86.)

Apparently sensing the weakness of his direct proof plaintiff strenuously insists his cause of action must be regarded as having been established by circumstantial evidence. We do not agree. To reach that result the circumstances relied on must be more than merely consistent with the existence of negligence. They must be of such character and so closely related to each other that the only reasonable conclusion to be drawn from them is that the carelessness of the defendant's truck driver was the proximate cause of the collision. That does not appear from the record.

Indeed, from a careful examination of the evidence as a whole, we are forced to the conclusion that plaintiff's claim of negligence on the part of defendant is based purely upon speculation and conjecture. It necessarily follows the trial court properly sustained the demurrer on the ground the evidence failed to show defendant's negligence as a matter of law.

The conclusion just announced really ends this lawsuit and makes unnecessary consideration of plaintiff's contention the trial court erred in sustaining defendant's demurrer on the ground his own evidence shows he was guilty of negligence which was the proximate cause of his injury. Be that as it may, we are constrained to decide that issue.

In this state pedestrians and drivers of motor vehicles have an equal right to use the streets and highways and upon each there devolves a corresponding duty to employ ordinary care for their personal safety (*Stotts v. Taylor,* 130 Kan. 158, 285 Pac. 571; *Crowder v. Williams,* 116 Kan. 241, 226 Pac. 774). The only exception to the rule, not here involved, is at street intersections where a

higher degree of responsibility toward pedestrians rests on auto-mobile drivers than elsewhere on the city streets. (*Cusick v. Miller,* 102 Kan. 663, 171 Pac. 599.)

That a plaintiff's negligence, or his contributory negligence, will bar him from recovery in an action for damages sustained in an automobile casualty and that a demurrer to his evidence should be sustained where either negligence or contributory negligence clearly appears from his evidence cannot be questioned. (*Dolloff v. City of Wichita,* 147 Kan. 63, 75 P. 2d 221; *Crowder v. Williams,* supra; *Hanabery v. Erhardt,* 110 Kan. 715, 205 Pac. 352; *Houdashelt v. State Highway Comm.,* 137 Kan. 485, 21 P. 2d 343; *Moler v. Cox,* 158 Kan. 589, 149 P. 2d 611.)

No useful purpose will be served by repeating the evidence hereto-fore quoted. It will suffice to say that when the entire record is surveyed and critically analyzed we believe it requires the conclu-sion that reasonable minds could only conclude the real cause of the deplorable accident resulting in plaintiff's serious injury was his own lack of care in not looking for, or if he was looking, in not seeing, the defendant's truck in the street in time to stop before colliding with it.

We note a final contention that plaintiff, because of his inability to remember and testify as to his conduct and action immediately prior to the occurrence of the accident, is entitled to the presump-tion of due care. Assuming, without pausing to pass upon whether this contention is meritorious, it is of no help to plaintiff. Such a presumption is always rebuttable and can be overcome by evidence. Plaintiff's evidence does just that. It reveals that on a bright, clear day, at a time when there was nothing to obstruct his vision, he attempted to cross a city street between two intersections under conditions requiring him to not only look but yield the right of way to vehicles upon the street. That he failed to stop and the collision resulted is conceded. If he looked he was bound to see what he could and should have seen (*McDonald v. Yoder,* 80 Kan. 25, 101 Pac. 468; *Lilly v. Wichita Railroad & Light Co.,* 127 Kan. 527, 530, 274 Pac. 205).

The judgment is affirmed.