No. 39,658

WALTER L. COLLINS, *Appellee,* v. THE WICHITA TRANSPORTATION CORPORATION, a Corporation, *Appellant.*

(281 P. 2d 1102)

Opinion filed April 9, 1955.

*Robert N. Partridge,* of Wichita, argued the cause, and *George B. Powers, Samuel E. Bartlett, Carl T. Smith, John F. Eberhardt, Stuart R. Carter, Robert C. Foulston, Malcolm Miller,* and *Robert M. Siefkin,* all of Wichita, were with him on the briefs for the appellant.

*Lewin E. Timmerman,* of Wichita, argued the cause, and *Harold L. Blake,* of Wichita, was with him on the briefs for the appellee.

The opinion of the court was delivered by

PARKER, J.: This was an action to recover damages from a public carrier for personal injuries sustained by a pedestrian as the result of a collision with a motor bus while crossing a street intersection. The cause was tried by a jury which returned a general verdict for plaintiff along with answers to special questions. Following the overruling of post trial motions the trial court approved the verdict and rendered judgment thereon. The defendant appeals.

The pleadings are not involved and for that reason all that need be said respecting them is that each party charges that negligence on the part of the other was the proximate and legal cause of the accident and the case was tried on issues thus joined.

During the course of the trial the defendant demurred to plaintiff's evidence on grounds it failed to show facts sufficient to constitute a cause of action and disclosed plaintiff was guilty of contributory negligence as a matter of law. It also moved for judgment for the same reasons. When these motions were overruled it adduced its evidence.

At the close of the case the cause was submitted to the jury under instructions of the court. In due time this body returned its general verdict in favor of plaintiff for approximately one-fourth of the amount claimed in his petition together with answers to seven submitted special questions. These questions and answers read:

"No. 1. Q. State the speed that you find the bus was traveling as it entered the crosswalk. Answer: 8 miles per hour.

"No. 2. Q. How was the plaintiff moving at the time of the collision and immediately prior thereto? Answer: Walking in a normal manner.

"No. 3. Q. As the front of the bus crossed the west line of the crosswalk was plaintiff then standing in the safety island? Answer: No.

"No. 4. Q. Do you find that the plaintiff, by the use of reasonable care, could have avoided the accident with the bus? Answer: No.

"No. 5. Q. Do you find that plaintiff's injury was the result of an unavoidable accident? Answer: No.

"No. 6. Q. Was plaintiff guilty of negligence which was a proximate cause of his own injury? Answer: No.

"No. 7. Q. If you find for the plaintiff, state the acts or act of negligence you find against the defendant. Answer: Failure to use due care in the operation of his vehicle and for the safety of pedestrians."

After examining the foregoing questions and answers the trial

court stated the answer to question No. 7 was not clear and instructed the jury to return to the jury room for the purpose of making it more complete. This was done with the result that such answer, when finally returned into open court, read:

"Failure to use due care in the operation of his vehicle and for the safety of pedestrians. Failed to yield the right of way to pedestrian already in crosswalk and in the act of proceeding to the south curbing of Douglas Avenue."

Following the return of the verdict the defendant filed a motion for judgment *non obstante;* a motion to strike the answers to special questions Nos. 3, 4, 6 and 7; and a motion for new trial. All these motions were denied. Thereupon it perfected this appeal and now specifies the trial court erred in overruling its demurrer to the evidence, its post trial motions and in rendering judgment against it. Some of the errors assigned are neither briefed nor argued, hence they must be regarded as abandoned (See West's Kansas Digest, Appeal & Error § 1078 [1]; Hatcher's Kansas Digest [Rev. Ed.], Appeal & Error § 185) and will be given no further consideration in this opinion.

Contentions advanced by appellant in support of its position the judgment should be reversed are of such nature as to require a brief review of the evidence.

Some of the facts, particularly those relating to the situation existing prior to the accident, are not in dispute and can be stated thus:

Main Street, fifty-eight feet in width, running north and south and Douglas Avenue, eighty feet in width, running east and west intersect in the heart of the business section of the City of Wichita. At that point the intersection is controlled by electric traffic signals, traffic being regulated by red, amber and green lights. The weather in Wichita on the morning of Friday, November 23, 1951, was cloudy and misty. At about 9 o'clock of that morning one of appellant's local passenger buses approached the intersection from the north. At or about the same time appellee arrived at the northeast corner of such intersection with the intention of proceeding south across it in the east pedestrian traffic lane. From this point on the factual picture is not so clear and had best be stated in accord with our version of the import to be given the testimony adduced by the respective parties.

Appellee, who we pause to note was the only witness testifying in his own behalf respecting how the accident occurred, testified

on direct examination in substance that he arrived at the northeast corner of the intersection and waited until the green light came on before he proceeded south across it; that when he reached the safety zone, a cement obstruction to automobiles located halfway between the north and south curblines on Douglas Avenue, the traffic light had changed to red; that he remained in the safety zone until such light again changed to green for southbound traffic; that thereupon he looked to the east and west as well as to the south for approaching cars or trucks and saw none in the intersection; that he then left the safety zone and proceeded to walk south across the southern half of Douglas Avenue and reached a point two-thirds of the way from the safety zone to the south curbline of such street; that upon reaching such point he was hit by the appellant's bus, which was making a left turn in the intersection, on his right foot and knocked down, striking his head on the pavement; and that as a result he sustained the injuries described in his petition. On cross examination appellee admitted that he knew the bus made a left turn at the intersection in question; that as he proceeded from the safety zone toward the south line of Douglas Avenue he did not look behind him to see if a bus was coming; and that he did not see the bus involved in the accident at all until it hit him. However, he did state that before leaving the safety zone he looked to the west because he knew appellant's buses made a left hand turn at the intersection and that at that time he did not see any bus there.

Appellant's evidence consisted in part of the testimony of its driver who testified to the effect that he stopped his bus before entering the Main Street-Douglas Avenue intersection from the north; that he then started up; that thereafter the bus paused or stopped in the center of the intersection to allow north bound traffic to clear; that at that time he saw appellee standing in the safety island; that the last time he saw him prior to the accident was when the bus, which was eight feet wide and thirty feet long, had already entered the north-south crosswalk on the southeast corner of the intersection and appellee was still standing in the safety zone; that the next thing that happened was that he heard something hit the bus whereupon he stopped immediately; that at that time the front end of the bus had already crossed the easternmost edge of the crosswalk line and the front wheels of the bus, located some seven feet from the front of the bumper to the front tires on the vehicle,

were about to cross such eastern line; and that after the accident appellee was lying on the street near the west line of the crosswalk, north and about even with the motor compartment on the bus.

Without further laboring the record it may be stated the evidence of several other witnesses, to be exact one bystander and four bus passengers, confirmed the bus driver's testimony in many particulars.

Although supplemented by extraneous arguments, the essence of the first and principal contention advanced by appellant as a ground for reversal of the judgment is to be found in its brief where, in clear and succinct language, it is said:

"It therefore remains only to consider whether the act of negligence found is supported by any evidence, and is sufficient to support the verdict."

In support of its position on this point appellant contends there was no evidence of any kind to support the jury's findings that its bus driver's negligence consisted of "Failure to use due care in the operation of his vehicle and for the safety of pedestrians. Failed to yield the right of way to pedestrian already in crosswalk and in the act of proceeding to the south curbing of Douglas Avenue." Let us see. Although our statute (G. S. 1949, 8-514) dealing with traffic controlled by traffic-control signals exhibiting different colored lights successively one at a time, permits vehicular traffic facing such a signal at an intersection to proceed straight through and make a left turn it also provides that such vehicular traffic shall yield the right of way to other vehicles *and pedestrians* lawfully within the intersection at the time such signal is exhibited. Appellee, as has been heretofore indicated, testified in substance that while standing in the safety zone within the involved intersection and facing the green light or go sign he looked to the west and to the south portions of the intersection and saw no bus, whereupon he proceeded to walk south across the southern half of Douglas Avenue on the east pedestrian traffic lane of Main Street; and that the accident occurred before he had crossed the intersection and while he was still on the traffic lane.

Standing alone the testimony, last above mentioned, if believed, was sufficient to warrant the jury in concluding appellee had the right of way in the intersection and sustain its special finding of negligence as well as its general verdict. This, we may add, is true even though, as appellant suggests, appellee's version of the situation existing just prior to and at the time of the accident seems

to be contrary to the weight of the evidence. This court has long been committed to the rule, so well-established as to hardly require citation of the authorities supporting it, that findings of fact and the general verdict of a jury based on conflicting evidence, when approved by the trial court, will not be disturbed on appellate review. (See West's Kansas Digest, Appeal & Error, §§ 1002, 1005; Hatcher's Kansas Digest, [Rev. Ed.], Appeal & Error, §§ 495, 496, 499.)

Appellant's second and final contention is based upon the premise the evidence discloses appellee was guilty of negligence as a matter of law which bars his recovery. Briefly stated its position is the question involved is not whether a person struck from the rear by a vehicle was guilty of negligence by not observing the vehicle, but whether a pedestrian who walks into the side of a large moving vehicle at an intersection is guilty of negligence which bars his recovery. Here again appellant's trouble springs from the fact it refuses to recognize the force and effect the jury had the right to give appellee's testimony, if believed. That testimony has been heretofore related and will not be repeated. It suffices to state we think that in the face of such evidence the answer to appellant's contention is to be found in *Butts v. Kan. Power & Light Co.*, 165 Kan. 477, 195 P. 2d 567, where the following statement appears:

"We point out it appears from the face of what has just been quoted appellants' position with respect thereto is predicated upon the assumption, and we might add upon its own construction of the evidence, that appellee was failing to keep a proper lookout and walked directly into the side of the bus. If that was the undisputed evidence we agree that under our decision in *Goodloe v. Jo-Mar Dairies Co.*, 163 Kan. 611, 185 P. 2d 158, appellee would have been guilty of contributory negligence and therefore precluded from recovery as a matter of law. The trouble is that under the facts and circumstances disclosed by the record in this case appellants' position is based upon a false premise. Conceding there was evidence which, if believed, would sustain their theory there was also substantial competent evidence, to which we have heretofore referred and therefore need not repeat, which if it were believed, would uphold appellee's theory that the bus came from behind and ran over her. In that situation, with the evidence in dispute, we think the question of appellee's contributory negligence was a fair question to submit to the jury and add that its decision on the point was conclusive." (pp. 480, 481.)

And so here, according to appellee's testimony, which the special findings definitely disclose the jury believed, appellant's bus came from behind, turned to the left and collided with him at a time when the driver of that vehicle should have yielded the right of way.

In view of such evidence, and applying the rule announced in the foregoing decision and the numerous authorities cited in *Bishop v. Huffman,* 175 Kan. 270, 262 P. 2d 948, which we pause to note is based on facts and circumstances somewhat similar to those here involved, we have no difficulty in concluding appellant's claim appellee was guilty of contributory negligence as a matter of law cannot be upheld.

In conclusion it should perhaps be stated that from an examination of the record in its entirety, and careful consideration of all arguments advanced in support of contentions entitled to appellate review, we are convinced this is primarily a fact case where the basic complaint is that appellant's evidence, not the appellee's, should have been accepted by the jury. It may be added that if it were our province to weigh the evidence and pass upon the facts we might be impressed by the evidence and the arguments advanced by appellant with respect thereto. As it is, since the jury with the trial court's approval, resolved those facts against it upon controverted but nevertheless substantial competent evidence our duty is to uphold the judgment and it is so ordered.

The judgment is affirmed.