No. 41,008

LLOYD C. TOWNSEND, Administrator of the Estate of Howard G. Townsend, Deceased, *Appellant,* v. PAUL LAVERNE JONES, *Appellee.*

(331 P. 2d 890)

Opinion filed November 8, 1958.

*Ernest J. Rice* and *Robert M. Cowger,* both of Topeka, argued the cause, and *James Sullivan* and *Wallace M. Buck, Jr.,* both of Topeka, were with them on the briefs for appellant.

*Michael A. Barbara,* of Topeka, argued the cause, and *Marion Beatty* and *Robert W. Domme,* both of Topeka, were with him on the briefs for appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is an action filed under the wrongful death statute by the administrator (appellant) for the death of Howard G. Townsend. The action was based upon the negligence of the defendant in driving his automobile in excess of the lawful speed limit, and in failing to yield the right of way to the decedent who was walking across a highway. Contributory negligence was the basis of the defense. The case was tried to a jury and resulted in a verdict and judgment for the defendant. Appeal was duly perfected from the judgment and all other adverse rulings.

The underlying question presented is whether there was sufficient evidence to support a finding by the jury that the decedent was guilty of contributory negligence.

Disposition of the trial errors specified control the decision herein.

In answer to special questions the jury found that the decedent failed to exercise due care in crossing the highway due to the fact that the headlights of the defendant's approaching automobile

were completely visible to the decedent. The jury also found in answer to special questions that the defendant was guilty of negligence which was the proximate cause of decedent's death in failing to exercise the due care that an ordinary prudent person would use while driving a vehicle on the highway and by exceeding the posted speed limits.

Howard G. Townsend, the decedent, 54 years of age and in good health, was a resident of Louisville, Kansas, and on December 9, 1955, between the hours of 4:00 and 5:00 p. m., consumed approximately four ounces of whiskey with a friend named Stratton. At approximately 6:00 p. m., the decedent entered a beer tavern located on the opposite side of Highway K-99 in Louisville. The highway runs north and south through the city. While in the tavern the decedent, according to the evidence, drank one bottle of beer and purchased a 6-pack carton of beer. At approximately 6:30 p. m., he left the tavern to return to his home across the highway. Near the tavern Plum Street intersects the highway, but it has no marked crosswalk. This particular December night was dark, cloudy and cold. At the time of the accident the decedent was dressed in a Navy blue P-coat, dark coveralls and a dark cap. A street light was located back a ways from the intersection but gave no benefit to the vicinity of the intersection itself.

At the particular time and place in question the defendant was driving his vehicle on Highway K-99 heading north approaching the intersection at a speed of 30 to 35 miles per hour. The posted speed zone was 30 miles per hour. The lights on the defendant's automobile were on and the vehicle was in good operating order. As the defendant approached this intersection, he suddenly saw a black figure (the decedent) about 10 to 15 feet in front of his automobile in the center of his lane of traffic crossing the highway in an easterly direction. The decedent had his head down, looking to the north away from the defendant's vehicle, his collar turned up and his cap pulled down low. The defendant swerved to the left to avoid striking the decedent, but struck him with the right front fender of his vehicle. The exact point of impact could not be definitely established since the decedent was lying approximately 6 to 8 feet from the intersection after the accident and when the highway patrolman arrived to investigate the scene, the decedent and the vehicle had been removed.

Within a short while after the decedent was removed from the scene of the accident to the hospital he died. The county coroner subsequent thereto collected a sample of blood from the body of the decedent at the mortuary and forwarded it to the Lattimore-Fink Laboratory in Topeka, Kansas, to determine blood alcohol content. The result of the test showed that the decedent had .238 alcohol content in his blood, and it was stipulated that the testimony of an expert would disclose that a person with blood alcohol content findings of .15 or more is under the influence of alcohol.

We shall consider only the questions presented by the appellant in his brief.

Did the trial court err in allowing the introduction of evidence relating to a blood test, the sample of which was taken from the body of Howard G. Townsend shortly after his death?

The test referred to is commonly known as the blood-alcohol test and the evidence with respect thereto has been indicated in the statement of facts. We are limited on review of this question to the specific objection made by the appellant in the trial of the case. The record as abstracted and presented to this court discloses the following objection by the appellant, plaintiff below:

"Mr. Rice: . . . I am going to object to any testimony concerning these blood tests, its taking and the figures arrived at as a result of it. I do so for two reasons. First, is this, that the blood test standing alone is inadmissible as to any issues in this case. Particularly I know, and the Court knows relating to contributory negligence and that is the point they are seeking to establish by the blood test the reason being that *there is no other competent evidence that has been introduced as yet relative to contributory negligence other than the blood test* . . ." (Emphasis added.)

The second reason stated was that "There is a break in the chain of the taking of the blood." Argument on this point beyond the objection itself is not reported in the record, and after further testimony of the county coroner was taken, which indicated that he collected a sample of blood from the body of Howard G. Townsend and transmitted the same to the Lattimore-Fink Laboratory, the court admitted the evidence. Since nothing further appears in the record concerning this second reason for the objection, we must assume either that the reason given was found to be unsound after proper foundation evidence was presented, or that appellant waived his objection on this particular point.

The question, therefore, concerning the admissibility of the blood test in evidence *is strictly limited to the only question pre-*

*sented by the record in this case*—whether other competent evidence tending to show contributory negligence had been introduced to establish a foundation for the admission of evidence derived from a blood test indicating intoxication on the question of decedent's contributory negligence.

At the precise time appellant, plaintiff below, objected the defendant below had not presented all of his evidence, but it was disclosed in the presentation of the plaintiff's case that the decedent had consumed both whiskey and beer commencing approximately two and one-half hours prior to the accident; that the decedent was completely dressed in dark clothes with a dark cap, coat collar turned up, cap pulled down, crossing the highway at or near an intersection on a dark, cloudy, cold December night. The highway patrolman testifying for the plaintiff on cross examination by the defendant disclosed that the accident report showed "darkness, street light not lit."

Technically, at the particular time the objection was lodged it would have been better for the trial court to have denied the admission of this evidence until more definite evidence of contributory negligence had been introduced, but on the basis of the record presented this would constitute only technical error since the defendant, who was called as a witness immediately after the coroner, disclosed that at the moment he first saw the decedent in his lane of traffic crossing the highway he had his head down looking to the north away from the vehicle in which the defendant was approaching.

The appellant concedes there is no Kansas case covering the precise point involved concerning the admission of evidence derived from a blood test to show intoxication prior to the introduction of other competent evidence tending to show contributory negligence. Reliance is placed upon *Lynch v. Clark et al.*, 183 Ore. 431, 194 P. 2d 416, where the Oregon Supreme Court held that in the absence of other evidence tending to show contributory negligence, evidence derived solely from a blood test indicating intoxication was insufficient to present a jury question of contributory negligence. The opinion of the Oregon court is well reasoned and one to which this court can subscribe as good law. The fundamental principle underlying the decision is that intoxication alone is not sufficient to constitute negligence. Intoxication does not *per se* constitute contributory negligence, but is a matter to be taken into consideration as

bearing on the question whether the pedestrian has, by his own conduct, brought the injury upon himself. The law exacts from one who is voluntarily intoxicated the same degree of care and caution in avoiding an exposure of his person to danger as it exacts from a sober person of ordinary prudence under like circumstances. (See, *McIntosh v. Oil Co.*, 89 Kan. 289, 131 Pac. 151; and *Rhoades v. Atchison, T. & S. F. Rly. Co.*, 121 Kan. 324, 246 Pac. 994.)

In *Lynch v. Clark et al.*, supra, the court said:

"It is self-evident that inward intoxication cannot be the proximate cause of one's injury unless the inward condition is translated into outward conduct. . . ." (p. 443.)

In the instant case, however, there was other competent evidence introduced which tended to show contributory negligence on the part of the decedent for reasons hereafter disclosed, and the precise factual situation with which the Oregon court was confronted is not before us.

In the instant case the trial court instructed the jury concerning intoxication as follows:

"Evidence has been introduced by means of a blood test, for the purpose of establishing a state of intoxication on the part of Howard G. Townsend, at the time of the accident, which caused lack of proper care on his part for his own safety, thus contributing to the collision and final result.

"You are instructed that you should not consider the result of the blood test as the sole determining factor to establish a state of intoxication, but you should take and consider all of the evidence presented in this regard before arriving at your decision as to whether or not the deceased was in a condition which caused him to fail to exercise proper care for his own safety.

"If you find there was such failure on the part of the deceased, you should then determine whether or not that failure was the proximate cause of the accident. If you so find, and further determine the failure contributed to the accident, your verdict should be for the defendant. But if you do not so find, defendant has failed to prove this allegation of contributory negligence."

Upon all the evidence presented in the case the foregoing instruction was proper and correctly stated the law of the case.

In *Lynch v. Clark et al.*, supra, the Oregon court confined its decision to the issue presented and did not reach the more serious question. It said at page 450:

". . . Since the proffered evidence was properly rejected for the reasons indicated, it follows that it is unnecessary to decide whether the removal by the coroner of a small quantity of blood from a corpse constitutes an unlawful search or seizure, and if it does, then whose constitutional rights, if any, are violated thereby, and if violated, whether that fact would render the evidence inadmissible . . ."

The particular point there suggested was not raised in the trial of this action or presented to the trial court, and we are not constrained to take the liberty to consider it upon review. Appellant is in no position to raise the point on appeal and has not attempted to do so. Therefore, whether it is proper to take a sample of blood from a deceased person as indicated by the facts in this case remains an open question.

Each of the other questions raised by the appellant involves contributory negligence and to a certain extent is interwoven with the contributory negligence feature of the first question.

The second question presented is whether the respective rights and duties of the decedent and the defendant were properly set forth in the court's instructions.

The instructions given by the trial court pertinent to the issues presented are: Instruction No. 2 (contributory negligence); Instruction No. 6 (concerning intoxication—heretofore set forth in full and considered); and Instructions No. 10 and No. 11 as follows:

"No. 10.

"Plaintiff claims certain acts of negligence against the defendant which are set out in his petition. Likewise, defendant claims that plaintiff was negligent in the respects set out in defendant's answer.

"In this connection you are instructed that both plaintiff and defendant had a right to be on the highway; that it was the duty of each to use reasonable care and keep a lookout for each other upon the highway, and each had a right to assume and act upon the assumption that the other would exercise reasonable care in the use of the highway.

"You are further instructed that it is the duty of the driver of a motor vehicle and every other person using a public highway to look ahead and see whatever may be within his view which may affect his use of that highway, and keep a lookout for other vehicles and persons passing across or upon such highway, and exercise reasonable care to avoid a collision with them. Such driver or person using the highway is presumed in law to have seen that which he could have seen had he kept a proper lookout.

"No. 11.

"Section 8-532 of the General Statutes of Kansas 1949 provides:

" 'SPEED RESTRICTIONS.

" '(a) No person shall drive a vehicle upon a highway at a speed greater than is reasonable and prudent under the conditions then existing.

" '(b) Where no special hazard exists the following speeds shall be lawful, but any speed in excess of said limits shall be prima facie evidence that the speed is not reasonable or prudent and that it is unlawful.

" '(1) All vehicles 20 miles per hour in any business district;

" '(2) All vehicles 30 miles per hour in any residence district; . . .'
" 'PEDESTRIANS RIGHT OF WAY AT CROSS WALKS.
" 'Where traffic-control signals are not in place or in operation the driver of
a vehicle shall yield the right of way, slowing down or stopping if need be to
so yield, to a pedestrian crossing the roadway within any marked cross-walk
or within any unmarked cross-walk at an intersection, except as otherwise pro-
vided in this article . . .' "

It will be observed that the last portion of instruction No. 11 is
taken from G. S. 1949, 8-556. The appellant objected in the trial
court to the giving of all of these instructions, except No. 10.

Instruction No. 10 given by the court includes substantially all
of instruction No. 2 requested by the plaintiff except the following
which was requested:

". . . It is negligence as a matter of law to drive a motor vehicle in the
night time at such a speed that it cannot be stopped within the radius of its
headlights or within a distance that objects and obstructions and danger sig-
nals can be seen ahead of it."

In our opinion the trial court properly excluded this portion of
requested instruction No. 2 for the reason that there was no evidence
disclosed by the record before this court that the defendant could
not have stopped his vehicle within the range of his headlights.
The testimony shows that the defendant did not see the decedent
until he was within 10 or 15 feet from him. Whether or not the de-
fendant could have stopped his vehicle within the range of his
headlights was therefore immaterial.

The basis of appellant's objection to instruction No. 11 apparently
stems from the trial court's denial of instruction No. 6 requested
by the plaintiff below. It reads:

"You are instructed that once a pedestrian has committed himself to the
crossing of any highway or street, whether or not it be in a cross-walk, and such
commitment was properly made thereafter, he has the right to continue to
cross such street or highway and any and all oncoming motorist has a duty
under the laws of the State of Kansas to stop at the street or highway and
yield the right-of-way."

This requested instruction No. 6 is appellant's version of the hold-
ing in Barker v. Seber, 154 Kan. 24, 114 P. 2d 791. This is, indeed,
a strained construction of the holding in the Barker case particu-
larly as appellant seeks to have the requested instruction applied to
the facts and circumstances presented in the instant case.

It must be observed that all of the appellant's efforts in the instant
appeal seek to have this court determine as a matter of law that
the decedent was not guilty of contributory negligence, while in

the authorities upon which the appellant relies, *Barker v. Seber*, supra; *Bishop v. Huffman*, 175 Kan. 270, 262 P. 2d 948; and *Walker, Administratrix v. Gerritzen*, 179 Kan. 400, 295 P. 2d 635, which are cases somewhat similar on the facts to the case presently under consideration, although appearing in different postures, the court sought without exception to leave it within the province of the jury to determine the question whether or not under the facts and circumstances disclosed by the evidence the pedestrian was guilty of contributory negligence. In the Barker case an instruction given by the trial court which would have required the pedestrian to stop although two-thirds of the way across the highway when he could first have observed an approaching vehicle on the highway was held to be erroneous. In the Walker case the court rejected appellant's contention that the deceased pedestrian was guilty of contributory negligence as a matter of law upon consideration of a demurrer to the evidence on the authority of the Barker case, and also rejected appellant's contention that the record disclosed the decedent failed to yield the right of way as a matter of law. The court held that it was the province of the jury to determine those questions. In the foregoing two cases the statute now appearing as G. S. 1949, 8-557, was under consideration. In *Bishop v. Huffman*, supra, the court set forth the rules applicable where a pedestrian crosses a street or highway at a regular crosswalk and is struck by a motor vehicle. There it was held that a pedestrian about to cross a street intersection, who looks for approaching traffic and then enters such intersection under the authority of a go signal and attempts to cross under conditions and circumstances such as there involved, whether guilty of contributory negligence or not was a factual question to be determined by the triers of the fact.

Apropos to the facts and circumstances presented by the instant case is the language in *Goodloe v. Jo-Mar Dairies Co.*, 163 Kan. 611, 617, 185 P. 2d 158, where this court said concerning negligence actions of this type:

"Conceding, at the outset, that from our legion of reported negligence cases there may be found decisions in which something has been held or said that can be regarded as tending to support the respective contentions advanced by each of the parties it must be kept in mind that every negligence action is first of all dependent upon the factual situation disclosed by the record on which it is decided. There are, of course, certain fundamental principles of law applicable to negligence actions generally but in the final analysis the facts of each particular case determine its decision when tested by those principles."

The court's opinion in the Goodloe case cites many of the authorities and legal rules having application to the facts disclosed by the record in the case at bar. Reference is made to those rules of law without reiterating them herein.

In our opinion the trial court properly denied appellant's requested instructions and fairly set forth the law applicable to this case by giving instructions No. 6, No. 10, and No. 11.

The third question presented by the appellant in his brief is whether the trial court erred in giving the instruction on contributory negligence (No. 2). It is contended that there was no evidence of contributory negligence on the part of the decedent. This is the underlying basis upon which this appeal is founded.

In addition to the facts and circumstances heretofore related surrounding the accident in question there is other evidence which bears on the question of contributory negligence. The defendant, after testifying that he did not see the decedent until his vehicle was within 10 to 15 feet from him and at that particular time the decedent had his head down looking in the opposite direction from which the defendant was approaching, further observed that the decedent was a large man; that he saw him take one long step immediately in front of his vehicle; that the defendant did not apply his brakes, but attempted to swerve to the left to avoid striking the decedent; and that immediately after the removal of Howard G. Townsend, the decedent, to the hospital following the accident and prior to his death, the defendant visited at the hospital and the decedent said to him "I will never do that again." The deputy sheriff of Pottawatomie county testified that the tavern operator, Bert L. Myers, who sold the decedent his beer, was asked questions during the course of investigation to which he gave the following answers:

"Q. Did you ask Mr. Myers if Mr. Townsend had been drinking?
"A. No, I asked him if he was drunk.
"Q. What did Mr. Myers say to you in reply to that question?
"A. He said, 'Well, he could talk.'"

This testimony went to the jury without objection and it is therefore entitled to be given consideration. (*Goodloe v. Jo-Mar Dairies Co.,* supra.)

Upon all of the evidence presented together with all the facts and circumstances surrounding the accident, we are of the opinion that the trial court properly instructed on contributory negligence

and left this question for the decision of the jury. In similar cases where a pedestrian was involved in an accident with a motor vehicle the question of the pedestrian's contributory negligence was held to be one for the triers of the facts. (*Eaton v. Salyer,* 135 Kan. 411, 10 P. 2d 873; *Collins v. Wichita Transportation Corp.,* 177 Kan. 677, 281 P. 2d 1102; *Butts v. Kan. Power & Light Co.,* 165 Kan. 477, 195 P. 2d 567; and *Stotts v. Taylor,* 130 Kan. 158, 285 Pac. 571.)

The appellant asserts that there were no eye witnesses to this accident and the decedent was entitled to a presumption that he exercised due care for his own safety. That a decedent is entitled to a presumption such as indicated has been definitely established in this jurisdiction. (*Long v. Foley,* 180 Kan. 83, 299 P. 2d 63, and cases cited therein.) Appellant argues that included in this presumption is the fact that the decedent stopped, looked both ways, had plenty of time to cross the highway, and entered the intersection accordingly, and that to counteract this presumption there must be evidence, not speculation or conjecture.

While it is true that negligence cannot be presumed and cannot be founded upon mere conjecture, it is clear that evidence to overcome the presumption may be either direct or circumstantial. (*Miller v. Gabbert,* 154 Kan. 260, 118 P. 2d 523; and *In re Estate of Modlin,* 172 Kan. 428, 241 P. 2d 692.)

The position taken by the appellant is somewhat inconsistent. First he argues there were no eye witnesses to the accident when as a matter of fact the defendant was an eye witness after he had reached a point within 10 or 15 feet of the decedent on the highway. Next, after asserting that there were no eye witnesses, the appellant contends that the decedent was crossing at an unmarked crosswalk at the intersection. There is no evidence in the record to indicate that the decedent was crossing at this point on the highway. The only evidence is that the decedent's body was first seen lying 6 to 8 feet from the intersection. Exactly where he crossed the highway and where with respect to the intersection he was struck by the defendant's vehicle is not disclosed by the evidence. Therefore, the special rules of law applicable to the circumstances here presented (G. S. 1949, 8-556 or 8-557; and see *Goodloe v. Jo-Mar Dairies Co.,* supra) are dependent upon the jury's determination of this particular fact.

Isolated statements of law have been picked from the cases by the appellant in an attempt to show that the decedent was not guilty of contributory negligence as a matter of law. Typical is the statement that before a pedestrian can be convicted of negligence in failing to yield the right of way to an oncoming vehicle, it must first be established by the evidence that such vehicle was entitled to the right of way under the existing facts and circumstances. (Citing *Walker, Administratrix v. Gerritzen,* supra.) This and many other statements of law asserted by the appellant, all of which appear in cases heretofore cited, must be considered in connection with other applicable rules in negligence cases of this type depending on the particular facts and circumstances.

Negligence is the absence of due care according to the circumstances. Negligence involves a relationship between man and his fellows. Of paramount consideration in this type of case is the rule that pedestrians and drivers of motor vehicles have equal rights upon a highway, but that each must use as reasonable care as the circumstances require and exercise his right with due regard to the rights of others using the highway. (*Stotts v. Taylor,* supra.) The trial court properly instructed the jury on this point without objection by the appellant (Instruction No. 10).

In *Cusick v. Miller,* 102 Kan. 663, 171 Pac. 599, it was held that a pedestrian, arriving at a street intersection which he desires and attempts to cross, is *not necessarily guilty of contributory negligence* because he does not look behind him for approaching automobiles. On the other hand whether the pedestrian was guilty of contributory negligence by failing to exercise reasonable and ordinary care was said to be a question to be determined from all the facts and the trial court properly left the matter for the determination of the jury.

It is argued that if the defendant had been driving his vehicle at the legal rate of speed, the decedent would have had time to cross the highway without being struck. This simply says that *but for* the fact that the defendant was speeding the accident would not have happened. "But for" causation is not the test of liability in a negligence case. There must be more, the negligence must be the proximate cause and before a plaintiff can recover he must be free of negligence which contributed to the accident. In *Eaton v. Salyer,* supra, a pedestrian walking across the street thought he had time if the approaching truck had been going at the legal rate of

speed. The truck, however, was speeding and the pedestrian was confronted with an emergency. The court there held under the facts in the case that the pedestrian was not guilty of contributory negligence as a matter of law, the case clearly being one for the determination of the jury after considering the testimony of the witnesses and the reasonable inferences arising therefrom.

We hold upon all the facts and circumstances presented by the record in the instant case that there was sufficient evidence, if believed by a jury, to rebut the presumption that the decedent exercised due care for his own safety and from which the jury could find that the decedent failed to exercise due care for his own safety.

Having concluded that there was evidence from which a jury could find the decedent to have been guilty of contributory negligence, the law in this jurisdiction is well established that the findings of fact and the general verdict of a jury based upon conflicting evidence, when approved by the trial court, will not be disturbed on appellate review. (*Collins v. Wichita Transportation Corp.,* supra.)

Inasmuch as the trial errors specified by the appellant have been determined to be without merit, further specifications that the trial court erred in the judgment made and entered, in overruling the motion for a new trial and in overruling the motion to set aside answers to special questions, need not be considered.

The judgment of the trial court is affirmed.